HITCHCOCK and others *vs.* CADMUS and others.

An assignment, by a debtor, of his property real and personal, which is declared to be made "in order to provide for the payment of his debts;" the object and design of which appears, from the whole instrument, to be that the assignees shall sell and dispose of the assigned property and convert the same into money, and pay the debts of the assignor, is not rendered invalid by the insertion of a provision therein authorizing the assignees to "*manage and improve*" the assigned property; where the real estate is heavily incumbered and threatened with mortgage sales, and requires care and skill in order to keep and preserve it until a sale can be beneficially effected.

The authority given to the assignees, in such an assignment, to *manage and improve* the assigned property, is not to be construed—in the absence of any thing

Hitchcock *v.* Cadmus.

else in the instrument, favoring such a construction—as empowering the assignees to retain the assigned property for the purpose of erecting buildings, and making alterations and repairs upon the real estate, and thus to hinder, delay, and prevent creditors from collecting their just debts.

IN EQUITY. This was a creditor's bill. And in addition to the relief usually asked for in bills of that nature, it prayed that an assignment of his property executed by the defendant Cadmus, the judgment debtor, to the other defendants, might be declared null and void, as being executed for the purpose, and with the intent, of delaying and hindering creditors. The clauses in the assignment upon which this objection was founded are stated in the opinion of the court.

*J. W. Gerard, Jun.* for the plaintiffs.

*C. W. Sandford,* for the defendants.

HURLBUT, J. The assignment of Cadmus, which the bill seeks to set aside, is declared to have been made " to provide for the payment of his debts." It conveys all his real and personal estate to Clark and Fish, two of the defendants, upon trust, " to manage and improve, sell, assign, dispose of, and convey, collect, recover and receive, and convert into money, all and singular the assigned and transferred premises, and every part and parcel thereof, at such time or times and in such manner and form and upon such terms and conditions as they may deem most beneficial and expedient, and, until a sale of the said estate can be effected, in trust to mortgage the same or any part thereof, for the purpose of paying any mortgages or other incumbrances thereupon—and the moneys arising from the trust estate, after paying the expenses and disbursements attending the execution of this trust to pay," &c.—in satisfaction of the debts of the assignor.

It appears that at the time of executing this assignment Cadmus was the owner of a considerable real estate lying in the city of Brooklyn, which was heavily incumbered with mortgages; some of which were about to be foreclosed, and

that he was at the same time indebted to his assignees, and others, to an amount greater than his estate was sufficient to pay. By the assignment, certain debts were preferred, among which the debt due to the assignees was the most favored.

What was the intention of Cadmus in making this assignment? I am asked by the plaintiff's counsel to find that his intention was to create an illegal trust, or to convey his estate with a view to delay, hinder or prevent creditors; and to draw this conclusion from the language of the instrument of assignment alone. The plaintiffs insist that this instrument confers upon the trustees authority to manage and improve the real estate of the assignor in such manner, as they may deem most beneficial and expedient, in order to enhance its value for the benefit of the assignors; and authorizes them to incur expenses and disbursements for that purpose, and to reimburse themselves for the same out of the proceeds of the assigned property, and to retain such property in their possession for the purpose of making erections and improvements, to the manifest delay, hinderance and prevention of creditors. Or in another aspect, that it creates a trust for other purposes than to sell or mortgage, contrary to statute.

This construction of the instrument of assignment is based upon the words "*to manage and improve*," which are embraced in the clause declaring the trusts, attempted to be created by the instrument.

But I am unable to give these words so broad an effect, when used in the connection in which they stand. They are employed in respect to real and personal property, the former heavily incumbered and threatened with mortgage sales; and there is nothing else in the instrument which indicates that there was any delay or disbursement contemplated for the purpose of building upon, improving, or repairing the real estate assigned. It seems to me these words would be satisfied by construing the instrument of assignment to authorize the trustees to control and administer the assigned property, to meliorate the same by their careful and prudent management, and to sell it at such time and in such manner as would be most

beneficial to the creditors. Such a construction would be in harmony with other language in the assignment, by which it is declared to be made "in order to provide for the payment of debts," by which the assignees are directed "to sell, assign, deed, dispose of, to receive and convert into money all and singular of the assigned premises," and "until a sale can be effected, to mortgage," &c. The burthen of the trust appears to be to sell and dispose of the assigned property, to convert it into money, and to pay the debts of the assignor. On the other hand, there is no express declaration, and no words from which it seems plausible to argue, that it was the intention of Cadmus that the assignees should delay a sale of the assigned property for the purpose of improving it by building on the real estate, or making any physical change in its condition. No specific or general improvement of that sort is suggested, and no funds are provided or appropriated for such a purpose. And the assignees, acting under the assignment, have not practically given such a construction to the instrument, by attempting to make any such use or disposition of the assigned property, but have proceeded to sell and convert it into money for the purpose of paying debts. By interpreting the clause of the assignment referred to, to mean that the assigned property (a large share of which was so incumbered as to require care and skill in order to keep and prepare it for sale,) was to be so managed and improved or ameliorated in respect to its condition as would be most beneficial for the estate and the creditors; and that the same was to be sold without any delay for the purpose of making any physical improvement thereof, or to await an enhancement of value for any other cause; and that the proceeds are to be appropriated for the payment of the debts referred to in the assignment, we should attribute to the assignor a lawful intention, and do no violence to the language of the instrument in question. While it seems to me it would be giving very extraordinary effect and significance to the words "*to manage and improve*," in the absence of any thing else in the instrument favoring such a construction, to hold that they authorized the trustees to retain the assigned property

for the purpose of erecting buildings, making alterations and repairs upon the real estate, and to use the trust fund for such purposes, and thus to hinder, delay and prevent creditors from obtaining their just debts. In the connection in which they stand, these words do not necessarily import so much; and I think are satisfied, without attributing to the assignor an unlawful intention in making this assignment.

As I read that instrument, it is, in effect, an assignment of real and personal property in trust to pay the debts of the assignor; and for that purpose it gives the control and management of the assigned property to the assignees until its sale can be beneficially effected. It directs such sale, without stipulating for any delay, and it devotes the proceeds to the payment of just debts, and is, I think, valid in law.

There must be a decree accordingly, and the bill against the defendants Clark and Fish must be dismissed with costs. And as against Cadmus, the usual reference must be had for the appointment of a receiver of his estate.

