## RENTON *vs.* KELLY, Sheriff, &c.

Provisions in an assignment for the benefit of creditors, directing the assignee to continue and carry on a business for the period of eighteen months, at his discretion; to sell and dispose of the assigned property, and such other articles as he may manufacture, *on credit,* or otherwise; to use the proceeds in continuing the business; to employ the assignor in the business during the continuance of the trust, at a specified salary; leaving it in the discretion of the assignor to say when the trust shall be closed; and providing for the release of the assignor, and excluding from the benefit of the trust creditors who shall object to the trust deed; are contrary to law, and render such deed fraudulent and void as against the creditors of the assignor.

Renton *v.* Kelly.

THIS action was brought by George H. Renton, as trustee for the benefit of the creditors of. Andrew Campbell, against John Kelly, sheriff of the county of New York, to recover eight thousand dollars damages, being the value of certain machinery, tools, &c. wrongfully levied upon and sold by the defendant under an execution against the property of said Campbell, in favor of the Elizabethport Manufacturing Company. Andrew Campbell was a maker of printing presses, at the corner of Pearl and Elm street, New York, and there owned stock, machinery, tools, fixtures, &c. &c. necessary for such business. In 1859 he became much embarrassed, and John J. Merritt loaned and advanced him in cash, $20,000, or thereabouts. To secure these advances, Campbell executed to Merritt a chattel mortgage for $18,896, payable on demand, on his said machinery, tools, and office furniture, being a portion of his property at the corner of Pearl and Elm streets. This mortgage was dated and acknowledged April 4th, 1860, and filed April 5th, 1860, in the register's office, King's county ; Campbell then residing at Brooklyn. On the 4th May, 1860, Merritt demanded payment of the money secured by the mortgage. Campbell did not pay ; whereupon Merritt at once took possession of the mortgaged property under the mortgage, and kept possession, and, under an agreement between him (Merritt) and Campbell, dated 5th May, 1860, carried on the business in his (Merritt's) name until the 24th May, 1860, when he (Merritt) delivered the said property to the plaintiff, (Renton,) who took and retained exclusive possession until divested by the defendant. On the 24th May, 1860, Merritt, Campbell, and the plaintiff, (Renton,) made articles of agreement tripartite, whereby Merritt and Campbell conveyed their interest in certain other property they had at the corner of Pearl and Elm streets to the plaintiff in trust, upon certain terms and conditions therein named, subject to the liens by way of mortgage, held by Merritt. This agreement also contained full directions as to the management and disposition of the property in question in this suit, (viz. the

machinery, tools, office furniture, &c. in daily use in the business,) and for the disposition of the proceeds of the same, this property having been delivered as aforesaid by the owner, Merritt, to the plaintiff the same day, 24th May, 1860. The trusts of this deed were as follows : To take possession, *subject to the mortgage* liens, collect the moneys owing and choses in action, and apply them, in the trustee's discretion, to finish up work in process of manufacture, and to continue and carry on the business for a period not to exceed eighteen months, underlet room and power, employ workmen, furnish materials, sell on credit or otherwise, and apply the property which was not subject to mortgage in continuing and carrying on the business, and to the payment of debts in a certain order, and from time to time divide among the creditors in the ratio of two thirds to Merritt and one third to all the other creditors, until the indebtedness was fully paid, allowing for this a period of eighteen months. Then follows a *proviso*, that at the end, or earlier closing of the business, he should dispose of the property at public or private sale, *on credit*, or otherwise, and make dividends among such of the creditors as shall not have been paid. Certain collaterals which Merritt held for his indebtedness are mentioned in schedule D. which he was to retain and apply to his indebtedness as realized ; the dividends to be made by the trustee to Merritt on the full amount of his indebtedness without any other deduction than such sum as he should at the time of the dividend have received from the collaterals. Next follows a provision that the trustee should employ Campbell, during the trust, at a salary of $2000 per annum, and all expenses were to be paid by the trustee, including Campbell's bills to the lawyers. Merritt and Campbell could require the trust to be closed before the expiration of the eighteen months, when Campbell could be allowed to resume the business in his own name and on his own account and behalf, with the property then remaining in the hands of the trustee, on terms to be agreed upon between them, having in view the interest of Campbell's

Renton *v.* Kelly.

creditors, when the trust should cease. All the creditors of Campbell who should consent to take a dividend under the trust should be deemed to accept the provisions of the agreement in full of their claims, and release Campbell therefrom, and any creditor who should not signify in writing his assent to the agreement, should, at the option of the parties to it, be excluded from its benefits. After the trust was fulfilled, the property remaining was to be reassigned and returned to Campbell.

Renton, the plaintiff, having taken possession of the property under this trust, Campbell continued to work as provided in the agreement, and continued in possession of it subject to the lien of Merritt's mortgage, (which remained unimpaired, and could be enforced at any time he saw fit to enforce his lien,) and proceeded to use the property in conjunction with Campbell.

On the 3d September, 1861, the defendant levied upon and subsequently sold the property in question in this suit, under an execution upon a judgment for $2,328.27, in the suit of the Elizabethport Manufacturing Company against said Campbell; whereupon this suit was brought.

At the close of the case, the defendant's counsel moved to dismiss the complaint, on the ground that Mr. Renton, the plaintiff, as against the sheriff, had no title to this property.

The court held that the plaintiff had not shown any title to the property in question ; that no such delivery of the property to the plaintiff by Mr. Merritt as was necessary to pass the title had been shown ; that the deed of 24th of May, 1860, did not convey to the plaintiff any interest in or title to the property ; that the evidence established that on the 24th of May, 1860, the title to the property covered by the mortgage had become absolute in Merritt, the mortgagee, who was then in possession thereof, but that no transfer or delivery of the property, or of the possession of the same from Merritt to the plaintiff, had been proven ; that the assign-

ment under which the plaintiff claimed title to the property was void, as against the sheriff, acting under his process.

The motion was granted by the court, and the plaintiff's counsel excepted.

From the judgment of dismissal the plaintiff appealed.

*Joseph W. Howe,* for the appellant.

*A. J. Vanderpoel,* for the respondent.

*By the Court,* LEONARD, P. J.. The judge was right at the circuit, I think, in holding that the plaintiff had no valid title to the property in question, as against a judgment creditor of Campbell.

The plaintiff, by his complaint, claims title as trustee for the benefit of the creditors of Andrew Campbell. The only evidence of title is derived from the written instrument of May 24, 1860, between Merritt of the first part, Campbell of the second part, and Renton, the plaintiff, of the third part. The interests of Merritt and Campbell can be there ascertained, as they claim them to have existed; and that claim is affirmed by the plaintiff as a party thereto, and also by his introduction of the instrument in evidence. By the recitals thereof Merritt claims to own only the property mentioned in schedule A and to have *liens by way of mortgage* on other personal property of Campbell. The property mentioned in schedule A consisted of presses, and is not affected by this action; while that covered by the mortgage liens embraces the subject of this controversy. By the first article of the instrument Merritt relinquishes and quit-claims to Renton all the property embraced under the liens of the mortgages, " except such as are mentioned in schedule B." That schedule appears to contain many similar articles to those mentioned in the schedule attached to the answer — the complaint describes the property only in a very general manner. Their identity appears not to be in dispute.

Renton *v.* Kelly.

The instrument, so far as Merritt is a party, states no title in him to the machinery, tools, &c. (which are the subject of the controversy) except that of mortgagee. He relinquishes his lien, except as to a particular part, mentioned in schedule B, as to which he retains the lien of a mortgagee. The same right and title of mortgagee is again recognized by Campbell in the second article, and the property there is declared to be subject to the liens of the said mortgages, except so far as it has been released. It appears to be entirely clear that the title of Merritt, as recognized and declared by the said instrument, was that of a mortgagee only, notwithstanding the technical title of owner which had accrued by his demand of payment, and taking possession of the mortgaged property upon the neglect or refusal of Campbell, the mortgagor, to make payment on demand, according to the terms of the mortgage. Merritt must therefore, by the admission of the parties to that instrument, be regarded as having only the title of a mortgagee, and was not, of course, capable of creating any trust in respect to the title of the property in question. It may be observed, also, that no actual change of the possession of the property appears to have taken place, at any time.

The legal title, subject to the lien of the mortgages to Merritt, was in Campbell at the time of the execution of the said instrument, and the trusts therein mentioned must be regarded as having been created or granted by him. There was no occasion for Campbell to be united as a party to the instrument, except for the purpose of conveying to the plaintiff Renton, the legal title to the property, and vesting in him the trusts therein contained for the benefit of creditors, with a resulting interest in himself upon their payment.

The provisions of the trust are clearly void as against the creditors of Campbell. The learned counsel for the plaintiff has not attempted to vindicate them, but places the right of Renton to recover upon a title supposed to be derived from Merritt as the owner of the property at the time

the said instrument was executed. The fallacy of his claim is fully shown by the said instrument, which he produced in evidence as the foundation of his title. There is no other evidence tending in the smallest degree to give any title to Renton, the plaintiff, as trustee for the benefit of the creditors of Campbell, in conformity with the allegations of the complaint. As that instrument shows the title to the property in question to have proceeded from the debtor, Campbell, and the trusts thereby created, to be contrary to law, and fraudulent as to his creditors, the plaintiff has no cause of action to recover its value.

The judgment must be affirmed, with costs.

[NEW YORK GENERAL TERM, June 3, 1867. *Leanard, Geo. G. Barnard* and *Clerke,* Justices.]