# Richmond.

REEVES CATT, TRUSTEE, v. WM. KNABE & CO. MANUFACTURING CO.

NOVEMBER 19, 1896.

1. DEED OF TRUST—*Fraud Per Se—Liability of Corpus of Trust Fund for Debts Created by Trustee—Case at Bar.*—A deed of trust to secure creditors, which postpones the sale of the property coveyed for a reasonable time or which authorizes the trustee to continue the business and replenish the stock, or which contains other like provisions, merely for the purpose of realizing the best results, is not fraudulent *per se.* But a deed which subjects the *corpus* of the trust fund to liability for debts incurred by the trustee in the administration of the trust, confers powers adequate to defeat the trust, and is for that reason void. In the case at bar, the deed conveys to a trustee real and personal property, consisting of buildings, and furniture and appliances suitable for the conduct of a school, and authorizes the trustee to conduct a school for a period of eighteen months, and to that end to employ all necessary tutors and other agents, and to pay them out of the trust fund, and prefers the salaries of such tutors and agents, and the running expenses of the school to the creditors secured. The deed is fraudulent *per se.* The trust fund, in part at least, is the property conveyed, and this is subjected to the hazard of the successful operation of the school, which is not allowable.

Argued at Staunton. Decided at Richmond.

Appeal from a decree of the Hustings Court of the city of Staunton, pronounced September 21, 1895, in a suit in chancery wherein the appellee was the complainant, and the appellant and another were the defendants.

*Affirmed.*

The opinion states the case.

*Elder & Elder, Charles Curry* and *Blease & Perry*, for the appellants.

*A. C. Braxton*, for the appellee.

KEITH, P., delivered the opinion of the court.

Wm. Knabe & Co. Manufacturing Co., which sued on behalf of itself and other creditors of the Wesleyan Female Institute, filed its bill in the Hustings Court for the city of Staunton, alleging that a certain deed of trust made by the trustees of the Institute conveying its property, real and personal, to Reeves Catt, trustee, with authority to the trustee to continue to run the school in such manner as shall seem most conducive to the interest of said Institute from the date of the deed until July, 1896, a period of nearly eighteen months, and directing him out of the net earnings of said school to pay off the indebtedness of the Institute as provided in the deed, and at the end of that period, should any of the debts remain unpaid, to make sale of the property conveyed and pay them in the order named in the deed, was made with intent to hinder, delay, and defraud them and other creditors of the Wesleyan Female Institute.

To the bill of complaint the Wesleyan Female Institute and Reeves Catt, trustee, filed their answers denying its material allegations, and the case coming on to be heard before the Hustings Court, upon the pleadings and proof, and that court being of opinion that the trust deed in the bill mentioned is invalid as to the complaining creditors, adjudged and decreed that it be declared null and void as to them. From this decree an appeal was taken.

The deed, which is filed as an exhibit with the bill, is upon its face subordinate to the deed of trust dated July 25, 1870, to John B. Baldwin, trustee, to secure the sum of $22,500. Subject to this deed of trust the Institute conveyed all property, real and personal, to Reeves Catt, trustee. The real

estate, after payment of the deed of trust just mentioned, is charged by the deed under consideration, first with the payment of two notes—one to the First National Bank of Harrisonburg, and the other to the Staunton Savings Bank— and all the property conveyed is then declared to be in trust to secure the payment of a number of claims specifically set out in the deed and divided into four classes, the debt to complainant being named in the third class. A fourth class of creditors is also provided for, and to this class are relegated all creditors named in the deed who sue upon their claims at law or in equity, who are declared entitled to have applied to the satisfaction of their debts any surplus which shall remain after the debts in the preceding classes have been fully discharged.

That portion of the deed containing the provisions which have controlled the court in the conclusion at which it has arrived, is as follows:

"It is understood that Reeves Catt, trustee, hereinbefore named, shall take immediate possession, management, and control of all the property, real and personal, hereinbefore described and conveyed, immediately upon the recordation of this conveyance, and conduct the Institution known as the 'Wesleyan Female Institute' in said city in accordance with the purposes and designs of the said act incorporating said Institute, and the acts amendatory thereof, and as expressed in said act, in such manner as shall seem most conducive to the interest of said Institute, and to that end the trustee is authorized to employ such tutors and such other agents as he may deem necessary, and to pay to them a reasonable compensation for their services out of the trust funds; and the said trustee shall keep a strict account of all the receipts and disbursements, and out of said receipts he shall first pay all the costs of executing this trust, including the fee and tax for the recordation of this deed, a reasonable charge for the preparation of the same and other legal ser-

vices, a commission of five *per cent.* to said trustee, the salaries
and wages of any tutors and agents employed by said trustee,
the cost of insurance of the property herein conveyed or
any part thereof, and any other absolute and necessary ' run-
ning expenses ' of said Institute, and shall apply the remain-
der of the funds in the following manner, namely: First,
to the payment in full of the creditors whose debts are
secured in the first class in this deed, accepting the pro-
vision of this deed; and after the payment in full of such
creditors secured in the first class, then to the payment in
full of those creditors secured in the second class in this deed,
accepting the provisions of this deed; and after the payment
in full of such creditors secured in the second class, then to
the payment in full of those creditors secured in the third
class in this deed, accepting the provisions of this deed.    It
being understood that any creditor or creditors herein secured
who sue upon their claims either at law or in equity shall
constitute creditors secured in the fourth class in this deed,
and after the payment in full of the creditors secured in the
first, second and third class herein, then if any surplus shall
remain it shall be applied to the payment of the debts se-
cured in this fourth class.    It being further understood that
if the fund be not sufficient to pay all the debts secured in
any one class in this deed, then the fund applicable to that
class shall be paid *pro rata* by said trustee on such debts. It
being further distinctly understood that such trustee shall
have until the first day of July, 1896, to run said Institute
and pay off the indebtedness herein secured, in the order of
their priority, and if at the expiration of said period he is
unable to pay the same, then said trustee may sell either pub-
licly or privately all the property herein conveyed as a whole
or in part, and upon such terms and at such place or places
as to said trustee may seem most judicious, and, in event of·
a sale, said trustee after paying all the expenses of said sale,
including legal commission to said trustee, shall apply the

fund arising from the same in the order and with the priorities as hereinbefore fully set forth, and in accordance with the conditions and provisions of this deed. It is further understood that the trustee herein shall consult the Board of Trustees as to the appointment of any of the tutors."

A deed which contains provisions inconsistent with the avowed objects for which it is made and sufficient to defeat them, is null and void upon its face. This proposition was recognized by this court in the case of *Lang* v. *Lee,* 3 Rand. 410. A provision in a deed postponing the sale for a reasonable time and reserving the use of the property to the grantor in the meantime, does not of itself constitute fraud. "In such a case the interest reserved is subject to the grantor's debts, and is not withdrawn from the reach of creditors, but may be subjected in any appropriate proceeding for that purpose." See *Norris* v. *Lake,* 89 Va. at page 516 and authorities there cited, especially the cases of *Seaman* v. *Dance,* 11 Gratt. 778, and *Brockenbrough* v. *Brockenbrough,* 31 Gratt. 580.

Nor will the postponement of the execution of the trust for a reasonable time of itself vitiate the deed in those cases where the use of the property is not reserved to the grantor, but is conveyed directly to a trustee and is thus shielded from the pursuit of creditors. Illustrations of this class are to be found in *Marks* v. *Hill,* 15 Gratt. 400, where it is held that a provision in a deed of trust to secure creditors that the trustee might continue the business and replenish the stock, if intended merely as a means of realizing on the trust fund, and with the view of winding up the business, is not fraudulent *per se* so as to avoid the deed, and that a provision in such a deed that one of the grantors shall attend to the business under the control and direction of the trustee, who may at any time, on his own motion, sell the property at auction, and who is required to do so at the request of creditors, is not fraudulent.

The record presents for consideration a question which did not arise in the cases cited, and which is not controlled by the principles which they illustrate. Here the deed requires the trustee to carry on a school for eighteen months, and if that school does not realize a profit to the Institute, then the losses incurred may constitute a charge upon the trust property superior to the rights of the creditors secured.

In *Sheppards* v. *Turpin,* 3 Gratt. 373, where the deed authorized the trustees to advance to the grantor as much money as in his judgment would be sufficient to enable him to prosecute his business of brick-making, and provided that, if after such advances they shall think the conduct of the grantor injudicious or unthrifty, they should enter upon and take possession of the property and sell so much thereof as might be necessary for the repayment of the money lent, and hold the remainder of the property for the benefit of the trust, it was held that such a provision, being adequate to the defeat of the deed, rendered it fraudulent and void as to creditors, because it subjected them to the hazard of the grantor's imprudence or misfortune in trade.

The case of *Sheppards* v. *Turpin* is analogous to the case under consideration. In that case the trustees were empowered to advance money to the grantor for the conduct of the business in which he was engaged at the creation of the trust, while here the grantor empowers the trustee to continue the business in which the grantor was engaged at the institution of the trust. In the case of *Sheppards* v. *Turpin* the provision was held to avoid the deed, because the grantor had introduced a provision adequate to the defeat of the avowed objects of the deed, since he threw upon the creditors secured the chances of profit and loss—the casualties of trade. If the peril is here imposed upon the trust fund by the terms of the deed, it matters not that the agency selected is a trustee directed by the grantor to imperil the fund, while in the other the trustee was required to advance to the

grantor, or his agent, trust funds to be used in business. The result is the same if in both cases the losses in trade are to fall upon the fund.

While a trustee may, as we have seen, be authorized to continue the business of the grantor with the object of winding up the trust affairs and bringing the trust property to sale to the best advantage, and may, for that purpose, postpone for a reasonable time the execution of the trust, there seems to be no doubt that an authority in the trustee to carry on the business, and subject the trust subject to the casualties incident thereto by which it may be lost or wasted or subjected to charges superior to those of the creditors secured, would be void as provisions adequate to the defeat of the object of the deed.

In the deed under consideration, Catt, trustee, is required to take immediate possession of the property conveyed, and to conduct the school known as the Wesleyan Female Institute in the manner most conducive to its interest, and to that end he is authorized to employ tutors and such other agents as he may deem necessary, and to pay them a reasonable compensation for their services out of the trust funds. He is required to keep accounts of his receipts and disbursements, and out of the receipts he is directed, first to pay the costs of executing this trust, including the fee and tax for the recordation of the deed, the charges for the preparation of the same, and other legal services, and a commission of five *per cent.* to himself, and the salaries and wages of the tutors and agents so employed by him, the cost of insuring the property conveyed, and any other running expense, and the remainder of the funds he is directed to apply in the manner thereinafter named.

The general rule, without doubt, is that a trustee incurring charges in the administration of a trust is entitled to be reimbursed out of the trust fund. He may, under certain circumstances, if the trust fund is insufficient to indemnify

him, call upon the *cestui que* trust in whose behalf and at whose request he acted, and recover of them personally reasonable compensation for the time, trouble, and money expended. He must, of course, in all cases have proceeded strictly within the limits of his power, and, unless he acted with the express or implied promise of the beneficiaries to indemnify him, would be confined to such reimbursement as the trust fund itself could afford. See Perry on Trusts, sec. 909.

In 2 Pomeroy's Equity, section 1085, it is said: "The trustee is entitled to be allowed, as against the estate and the beneficiary, for all his proper expenses out of pocket, which include all payments expressly authorized by the instrument of trust, all reasonable expenses in carrying out the directions of the trust. * * * * * * * * * * He is entitled to be indemnified in respect of all personal liabilities incurred by himself for any of these purposes. Where a trustee properly advances money for any of the above-mentioned objects, so that he is entitled to reimbursement, he also has a lien as security for the claim, either upon the *corpus* of the trust property, or upon the income, as the case may be; but for moneys improperly paid there is no lien."

These principles are the dictates of common justice and common honesty. It would be in violation of both to say that a trustee discharging the duties imposed upon him by the deed under which he acts, and incurring expenses for which he would be personally liable, should not be indemnified out of the trust funds confided to his care so long as his conduct was guided and controlled within the limits prescribed by the deed which is the source of his authority. There can be no doubt that the trustee in the deed in question would be personally liable to those whose services he engaged for the salaries he agreed to pay, that he would be responsible to all who furnished him with supplies, and it

would follow as an inevitable result that he would be entitled in common justice to look to the fund for whose benefit he acted for protection and indemnity. He must, of course, confine himself within the terms prescribed by his chart, and can look for indemnity only in accordance with its terms, but, the duty having been imposed, and the authority having been conferred upon him, his right to indemnity follows as a necessary consequence from the performance of those duties and the powers conferred, and would extend to the whole trust fund committed to his management unless, by express provision, or by necessary construction, his right to reimbursement was limited and confined to a specific extent, or to a particular part of the fund. If we were to stop in the investigation of the deed at those provisions to which we have just adverted, there could be no doubt that the right to reimbursement for all expenses incurred in the discharge of the duty imposed would extend to the entire trust fund vested in the trustee. The language admits of no doubt, and scarcely calls for construction. He is directed to employ such tutors and agents as he may deem necessary, to pay them reasonable compensation out of the trust funds, to pay all reasonable running expenses out of the trust funds, and to apply the remainder in the manner thereinafter prescribed.

What are the trust funds here alluded to? The effort is made to limit the operation of the term "trust funds." to the receipts from the conduct of the business; in other words, to impose upon the trustee himself, or upon the tutors whom he employed, or upon those with whom he dealt, the hazard of the enterprise rather than upon those for whose benefit it was to be undertaken, but the reason for this alleged limitation is to be sought rather in the exigency of the case than in the language of the trust. Property, real and personal, had been conveyed to the trustee. It consisted of the buildings, of the furniture and appliances necessary to

the conduct of the business in which the trustee was required to engage. This property, so conveyed and thus to be used, constituted the "trust funds" out of which the running expenses of the enterprise were to be paid. As we have seen, the rule is that the trustee is entitled to indemnity, and that his right extends to the whole trust fund unless it be limited by the instrument from which his powers are derived. Up to this point, we can confidently say no such restriction can be inferred.

The deed further provides that the trustee shall continue the school until the first day of July, 1896, and that if the profits of his management are not sufficient at the expiration of that period to pay off the entire indebtedness, no part of which is to be paid until the "running expenses" are satisfied, then the *corpus* of the property is to be sold, and after paying the costs of sale, including the legal commission to the trustee, he "shall apply the fund arising from the same in the order and with the priorities as hereinbefore fully set forth, and in accordance with the conditions and provisions of this deed."

Now what is the order, and what are the priorities hereinbefore set forth? Plainly they are, first, the debts to the banks; secondly, the expenses incurred in the conduct of the school; and lastly, the other indebtedness secured, classified as hereinbefore stated. Of course, the grantors in the deed contemplated that the venture which they authorized the trustee to make would result in a profit, and the trustee himself seems not to doubt his ability to repair the disaster which had evidently overwhelmed this institution, and to achieve success in the management of the property and business which in other hands had brought only failure and loss, but experience teaches that enterprises the most promising, under management the most competent and intelligent, are oftentimes overcome by the vicissitudes of fortune, and we are to determine the propriety of the provisions of

this deed not by indulgence in the sanguine expectation of the grantor and the trustee, but by construction of the deed, to ascertain the powers conferred upon the trustee and decide whether, in the event of loss, that loss should fall upon the trust fund, upon the trustee, or upon those who confided in him.

We are not at liberty to construe this deed as though profits were certain to flow from the venture it authorizes, and refuse to consider the possibility of loss as resulting from it. If it may be attended with loss, and the consequences under the law as applied to the terms of the deed are to be borne not by the trustee, but by the trust fund to his exoneration, then we are bound to condemn the instrument which confers such power.

The charges incurred in conducting the school must of course be satisfied. It is expressly provided in the trust that they shall be paid, and it would follow as a necessary incident though such provision had been omitted. By whom are they to be paid ? The answer is that the responsibility for the administration of the trust rests with the trustee, and the measure of his liability is plain. If he exercises that prudence and discretion in the conduct of the affairs of the trust which men ordinarily bring to the management of their own affairs, he is acquit of all responsibility. It is only negligence, want of ordinary care, prudence and caution, or some positive misconduct amounting to a breach of trust, which will render him personally liable. So long as he faithfully and prudently administers his trust, the trust fund must protect and indemnify him against loss.

We have seen that the grantor has no right to impose upon his creditors the peril incident to the continued prosecution of the business in which he himself was engaged. If that portion of the deed already considered, measured by the general principles of equity which fix the right of the trustee to indemnity, fail to limit that right to the receipts to be

derived from the venture itself, but leave the trustee empowered to subject the *corpus* of the trust to his reimbursement, there is nothing in the concluding branch of that instrument to relieve the trust of the burden which he was thus authorized to impose. In the event that the profits which it was hoped the trustee would realize proved insufficient to satisfy the indebtedness, he was required "to sell and apply the proceeds in the order and with the priorities as hereinbefore fully set forth." That this expression does not apply merely to the indebtedness is clear from several considerations. In the first place, if it had been intended to be so limited, it could easily have been so expressed, but there is nothing of the sort to be found. The direction is positive that the fund is to be applied in a certain order and with certain priorities, and to find that order and those priorities we refer to the former portion of the deed. In other words, it seems to be clear that the fund to be derived from the sale is to be applied just as were the funds to be derived from the conduct of the school, first, to the running expenses, if any remain unpaid, and then the residue to the debts in the order named. Additional evidence is afforded that the construction contended for is correct by the consideration that, otherwise, the costs of executing the trust, the fee and tax for its recordation, the fee of the attorney for its preparation, and for other legal services, are wholly unprovided for and cannot be paid by the trustee.

We are of opinion, after carefully considering the deed, that Reeves Catt, trustee, being required to conduct the school and to pay the expenses thereof, would be entitled to indemnity from the *corpus* of the trust fund for all expenses incurred by him which the profits of the business did not satisfy, that such being the case there is in the deed a provision adequate to its defeat and the postponement of the creditors thereby secured, and that for this reason the deed is null and void, as being fraudulent in law; though the

court is also of opinion that there is no reason appearing in the record for the imputation of actual or intentional fraud to the grantor, the trustee, or indeed to any party concerned.

It is unnecessary to consider the other questions which were discussed, and the decree complained of is, for the reasons stated, affirmed.

RIELY, J., dissenting:

I do not dissent from the principle enunciated, that a deed of trust is invalid which authorizes the trustee to carry on the former business of the grantor and renders the *corpus* of the trust liable for debts incurred by the trustee in continuing the business, thereby endangering the security of the beneficiaries of the trust, and possibly defeating the object of the assignment; but I do not think that the provisions of the deed in question justify such a construction. The deed, in my opinion, does not expressly charge the *corpus* with the debts that may be incurred by the trustee in continuing the business, and I am not prepared to say that the law does so, unless such liability be expressed or necessarily implied. I am unable, for this reason, to concur in the opinion of the majority of the court.

BUCHANAN, J., concurs with RIELY, J.

*Affirmed.*