THE WELLS-STONE MERCANTILE CO. *vs.* G. A. GROVER, *et al.*

Opinion filed May 10th, 1898.

**Mercantile Trusts—Liability of Beneficiaries and Trustee for Goods Sold.**

> An insolvent debtor made a deed of trust, in which his creditors joined. By the terms of the deed, the trustee was to continue the business of the debtor as long as he should deem it for the interests of the creditors so to do. The entire management and control of the business were intrusted to him. Whenever the trustee deemed it best to discontinue the business, the property was to be sold, and the claims of all the creditors signing the deed were to be paid from the proceeds; the surplus, if any, to go to the debtor. *Held*, that the creditors signing the deed did not thereby render themselves the real proprietors of the business, and, therefore, that they were not liable to creditors of whom the trustee had purchased goods in the prosecution of such business. The relation created by the instrument was that of trustee and beneficiary, and not that of principal and agent.

**Liability of Trustee Upon His Own Contracts.**

> Ordinarily a trustee is himself personally liable on all contracts made by him as trustee.

**Charging Liability Upon the Trust Fund.**

> In exceptional cases he may, by express contract, prevent his becoming personally responsible; charging the liability on the trust fund itself.

**Following Trust Property.**

> Even when this has not been done the creditor may, under peculiar circum-

stances, proceed against the trust property, either in the hands of the trustee, or of the beneficiary himself.

Appeal from District Court, Cass County; *Pollock*, J.

Action by the Wells-Stone Mercantile Company against G. A. Grover and others.   Judgment for defendants, and plaintiff appeals.

Affirmed.

*Newman, Spalding & Stambaugh*, for appellant.

*Morrill & Engerud, Newton & Smith*, and *John E. Greene*, for .respondents.

CORLISS, C. J.   The defendants are sought to be held liable for goods sold to the trustee under an instrument creating a trust. The theory of plaintiff's counsel is that in the purchase of such goods the trustee was the mere agent of the defendants, who themselves were the real traders on whose behalf the business was being carried on.   It is therefore obvious that the decision on this appeal will turn upon the construction of the writing in which such trust is expressed.   G. A. Grover,—a merchant doing business in this state,—becoming embarrassed, transferred to Albert E. Jones, as trustee, all his property, for the benefit of his creditors; to be converted by such trustee into cash, for the purpose of paying his debts.   All his creditors executed the trust instrument; they being named therein as parties.   The trustee was authorized by the writing to make new purchases, and carry on the business, should he deem this course wise.   It is on. this portion of the instrument that plaintiff rests its claim that in making such purchases the trustee acted as agent for the creditors.   This action is against such creditors, to recover the value of goods purchased of the plaintiff by the trustee in the exercise of the discretion vested in him by the trust deed to continue the business.   As it is indispensable to the correct understanding of the case, we quote in full that part of the instrument which relates to the future prosecution of the business by the trustee:   "The said party of the second part shall have power to

continue said general merchandise business, and to sell the stock of general merchandise at private sale and in the usual course of trade, and to replenish said stock of merchandise with such articles of staple goods as may be necessary to successfully continue business; and such power shall continue so long as said party of the second part shall be of the opinion that the interests of said creditors will be best subserved by that method of executing said trust. Said parties of the third part, in consideration of said provisions herein made for the payment of their respective demands against said party of the first part, have agreed to, and do hereby, grant to him an extension of eighteen months' time from the date hereof, within which to pay his debts; and no attempt shall be made by them, or either of them to enforce payment of any of said debts by any legal proceedings during the period of such extension. And the said above mentioned 'secured creditor' hereby agree, immediately upon the execution and delivery of this deed of trust, to surrender to said party of the second part all securities which they hold for their said claims; and such of said 'secured creditors' as have liens upon the real or personal property of said party of the first part by virtue of any mortgages or execution levies thereon agree to forthwith, and upon the delivery of this deed of trust, release their liens and the levies of their executions upon said property. Said party of the first part shall and will do all he reasonably can to assist said trustee in realizing the amount of said debts as fast as practicable: provided, however, that all things done by said party of the first part with reference to said business and the management thereof shall be under the supervision and direction of said trustee, and that for such services as said first party shall render with reference thereto he shall make no charge, other than for actual necessary living expenses. Said trustee shall operate and manage said business in the ordinary way of retail trade, unless and until he shall become satisfied that the interests of said creditors will be best subserved by closing out said business, and by disposing of said property, both real and personal, at forced

sale. If at any time said trustee shall conclude that more money can be realized from said property, or from any portion or class thereof, by public sale, than by sales in the ordinary way of retail trade, then and in that event he is hereby authorized and empowered to, and may, close out said trust in the manner usual under the ordinary assignment for the benefit of the creditors under the laws of the State of North Dakota."

At the outset we desire to answer the argument of counsel for plaintiff, that unless this action will lie the plaintiff is without redress. We are of the contrary opinion. If the trust is valid,— and that point does not seem to be controverted,—then the trustee became personally liable on every contract made by him in the discharge of the trust. He is to-day liable to the plaintiff for the value of the very goods, the value of which it is seeking to recover in this action. In dealing with the business world, a trustee cannot escape personal liability unless he lawfully restricts his liability in the contract itself. He is not in the position of a mere agent, and therefore knowledge on the part of the creditor that the trustee is acting only as such will not enable the latter to insist that such creditor shall look to only the trust estate for his pay. It is true that the trustee may claim reimbursement from the funds in his hands for any proper expenditure made by him in the execution of the trust; and this equity is the foundation of the right of the creditor, under peculiar circumstances, to proceed directly against the trust property itself. See *Hewitt* v. *Phelps*, 105 U. S. 393; *Clopton* v. *Gholson*, 53 Miss. 466; *Norton* v. *Phelps*, 54 Miss. 471; *In re Johnson*, 15 Ch. Div. 548; *Dowse* v. *Gorton*, 42 Ch. Div. 536; *Mason* v. *Pomeroy*, 151 Mass. 164, 167, 24 N. E. Rep. 202. That the trustee is himself personally liable is well settled; and the general rule is that the creditor cannot claim any lien on, or equitable right in, the trust estate, but must look entirely to the trustee and his individual property for his pay. *Hewitt* v. *Phelps*, 105 U. S. 393; *Clopton* v. *Gholson*, 53 Miss. 466; *Norton* v. *Phelps*, 54 Miss. 471; *Kedian* v. *Hoyt*, 33 Hun. 145; *New* v. *Nicoll*, 73 N. Y. 127; *Austin* v. *Munro*, 47 N. Y.

360; *People* v. *Abbott*, 107 N. Y. 225, 13 N. E. Rep. 779; *Hackman* v. *Maguire*, 20 Mo. App. 286; *Mayo* v. *Moritz*, 151 Mass. 481, 24 N. E. Rep. 1083; *Association* v. *McAllister*, 153 Mass. 292, 26 N. E. Rep. 862; *Mason* v. *Pomeroy*, 151 Mass. 164, 167, 24 N. E. Rep. 202; *Gill* v. *Carmine*, 55 Md. 339; *Burt* v. *Bull*, [1895] 1 Q. B. 276. /Of course, the parties may agree that the trustee shall not be held personally on the contract, but that only the true estate itself shall be chargeable with the debt. In such a case, if the instrument creating the trust authorizes this to be done, or even when it does not give such authority, if the circumstances are peculiar, the trustee is not bound, but the fund is. *New* v. *Nicol*, 73 N. Y. 127; *Gill* v. *Carmine*, 55 Md. 339, 342, 343. /These considerations make it plain that plaintiff is not without remedy in case we hold that these defendants are not liable. As they have themselves consented that the property which otherwise would have gone to pay their demands should be left in the hands of the trustee for a season, subject to all the risks of trade, they cannot complain if the venture proves a failure, and, instead of resulting in an increase of their dividends, actually leads to the diminution, or even the total loss, thereof. They are not entitled to any portion of the property until all proper expenditures made by the trustee have been repaid to him. And if he should distribute the estate, leaving unpaid any of the debts incurred by him in the execution of the trust, we have no doubt that a court of chancery would subrogate the creditors to his equity, and allow them to follow, in the hands of those who had received the property, the portion of the assets which had been paid to them by the trustee. And even while the trust property is still in the hands of the trustee, those who had dealt with the trustee as such might, under special circumstances, obtain a decree impressing upon such property an equitable lien in their behalf. See cases first above cited.

We now turn to the crucial point in the case. What relation did the creditors who signed the trust deed thereafter sustain to the business carried on thereunder? Were they themselves the

proprietors of such business? We think not. It is true that they had an interest therein. But such interest did not differ from the interest of any creditor in the successful prosecution of a business by his debtor. While this property was still under the control of the debtor all of these creditors were interested in its being so managed by such debtor as to produce profit. In this way the ability of the debtor to pay would be increased. But such interest would not make them liable as the proprietors of such business. Suppose these same creditors had refused to grant the debtor an extension of time except on condition of his giving them security that he would not transfer any of his property, or create any liens thereon, but would pay them from time to time the profits of his business, as dividends on their claims; and suppose that the debtor had given such security, and had been left in control of the business. Would it be seriously urged that such an arrangement had rendered the creditors liable, as principal traders, on all the contracts of such debtor made in the prosecution of such business? We believe that it would not. What was done by all the parties was substantially the same thing. Instead of taking security in the form of a bond, they took it in the form of a trust. They were no more interested in the business under the management of the trustee than they would have been had it been left in the hands of the debtor himself. Their interest was neither greater nor different. It was in all respects precisely the same. They acquired, however, by the transfer made by the trustee, an equitable interest in the property so transferred. But they held this interest not as proprietors of the business. It was merely as security for the collection of their claims. Both parties had made the trustee the proprietor, with an ultimate obligation on his part to account to the creditors first, and then to the debtor, for any surplus remaining after all claims had been extinguished. Had the debtor sold the property to the creditors in payment of their demands, and had they, as owners of such property, intrusted it to the trustee

N. D. R.—30.

to manage in their interest, it might well be claimed that they were themselves the proprietors of the business carried on by the trustee, and liable as such, on the theory that he was a mere agent in the prosecution thereof. Such a case, however, is not before us. In the supposed case the creditors would, as proprietors of the business, be entitled to all the profits thereof, without reference to the amounts of their several claims respectively. But in this case they have no such interest in the business at all. They have only the incidental interest which all creditors have in the profitable management of the affairs of their common debtor. They are interested indirectly, as creditors, and not directly, as proprietors. As the demands of these creditors were not extinguished by the transfer to the trustee, the person who was most directly interested in the business was the debtor himself. Every dollar of profit would go to him. True, he would, because of the trust, have to turn over such profits in payment of his debts, until they had all been satisfied; but they would be turned over as his property, and he would secure the full benefit thereof, and then, after all his obligations had been discharged, every dollar of profit would flow into his own pocket. Certain it is that none of the creditors who executed this trust deed ever deemed that they would become responsible for the debts contracted by the trustee in the operation of the business, in any other sense than that their dividends might be lessened, or even destroyed, by the failure of the venture. It would astonish any creditor holding a small claim to discover that he had become liable for all the debts incurred by the trustee in carrying on the business. This, of course, should not control us. But in settling a question of this character we should have some regard to the understanding and convenience of the business world. Jurisprudence should rest, not on a mere logic, but on the actual condition of men in society, and their practical relations to each other in business life. Transactions of this character, are, we believe, quite common, and they are certainly very beneficial to both the debtor and his creditors. We should not, therefore, throw in the way of those

who wish to enter into them such serious obstacles as will deter them from making such advantageous arrangements, unless we are compelled to do so by some settled legal principal, or some consideration of justice or policy. This argument was given much weight by Lord Cranworth in *Cox* v. *Hickman*, 9 C. B. (N. S.) 47, —a case which, as we shall see, is directly in point. He says at page 94: "I have on these grounds come to the conclusion that the creditors did not by executing this deed make themselves partners in the Stanton Iron Company, and I must add that a contrary decision would be much to be deprecated. Deeds of arrangement like that now before us are, I believe, of frequent occurrence: and it is impossible to imagine that creditors who execute them have any notion that by so doing they are making themselves liable as partners. This would be no reason for holding them not to be liable, if, on strict principles of mercantile law, they are so. But the very fact that such deeds are so common, and that no such liability is supposed to attach to them, affords some argument in favor of the appellant. The deed now before us was executed by above a hundred joint creditors, and a mere glance at their names is sufficient to show that there was no intention on their part of doing anything which should involve them in the obligations of a partnership. I do not rely on this, but at least it shows the general opinion of the mercantile world on the subject. I may remark that one of the creditors, I see, is the Midland Railway Company, who are creditors for a sum only of £39, and to suppose that they could imagine that they were making themselves partners is absurd."

All that the creditors intended by signing this trust deed was to consent to the continuance of the business by the trustee at his option; thus barring the right of any one to assail the transfer as a fraud upon creditors, on the ground that it operated to hinder and delay them in the collection of their demands. In the absence of such consent by them, it is obvious that they could have attacked the deed as fraudulent. A debtor cannot devest himself of all interest in his property, and yet create a

trust relating thereto, to continue. indefinitely. If such a trust were valid, creditors could never reach the assigned estate, in the enforcement of their claims, unless the trustee, in the kindness of his heart, should see fit to wind up the trust and distribute the property among them. *Jones* v. *Syer*, 52 Md. 211; *Lumber Co.* v. *Hoyt*, 71 Miss. 106, 14 South. 464, *Catt* v. *Manufacturing Co.*, 93 Va. 741, 26 S. E. Rep. 246; *Webb* v. *Armistead*, 26 Fed. Rep. 70; *Renton* v. *Kelly*, 49 Barb. 536; *Bank* v. *Martin*, 96 Tenn. 3, 33 S. W. Rep. 565; *De Wolf* v. *Manufacturing Co.*, 49 Conn. 282; *Bank* v. *Inloes*, 7 Md. 380; *Gardner* v. *Bank*, 13 R. I. 155; *Gardner* v. *Bank*, 95 Ill. 298. But any reasonable authority given to the trustee to manage the business under the direction of the court, and subject to the right of creditors to control the discretion of the trustee, is not nec- essarliy fraudulent as to creditors. *Robbins* v. *Butcher*, 104 N. Y. 575; 11 N. E. Rep. 272; *De Wolf* v. *Manufacturing Co.*, 49 Conn. 326; *Stoneburner* v. *Jeffreys*, 116 N. C. 78, 21 S. E. Rep. 29; *Ravisies* v. *Alston*, 5 Ala. 297; *Woodward* v. *Marshall*, 22 Pick. 468; *De Forest* v. *Bacon*, 2 Conn. 633; *Kendall* v. *Carpet Co.*, 13 Conn. 383; *Foster* v. *Manufacting Co.*, 12 Pick. 451; *Hitchcock* v. *Cadmus*, 2 Barb. 381; *Insurance Co.* v. *Foster*, 58 Ala. 502. But the provision in the deed in question was of such a character that it vested such absolute power in the trustee, as to the continu- ance of the business, that the deed could not have been sustained, as against the creditors of the debtor, had it not been signed by them. This undoubtedly furnishes the explanation of their join- ing in the execution of the instrument. They intended to estop themselves by their signatures from claiming that the transfer was fraudulent as to them, so that no creditor would be in a posi- tion more advantageous than the others, but not to become themselves the actual owners of the property, and the real pro- prietors of the business carried on therewith.

The precise question before us has been elaborately discussed in England, in a very celebrated case,—*Cox* v. *Hickman*. The single question there involved was whether certain creditors, who had signed a similar trust deed, had thereby become the proprie-

tors of the business which the trustees were authorized by the terms thereof to carry on; so that debts contracted by them in the conducting of such business were debts of the creditors, on the theory that the trustees were acting in the capacity of agents for them, as real owners, and not as trustees for them, as mere beneficiaries. The substance of the trust deed in that case, so far as its provisions bore upon the question before the court, is accurately stated by Lord Wensleydale as follows: "The deed is an arrangement by the Smiths, who had become insolvent, with their creditors who subscribed the deed, for assigning all their property to trustees, in trust to convert part, not necessary to conduct the business (and leaving £4,000 for that purpose,) and divide the proceeds among the creditors, and then to continue to carry on, in the name of the Stanton Iron Company, the business lately carried on by the Smiths, and for that purpose to manage the works as they thought fit, with various powers,—to renew leases, insure, erect buildings and machinery, appoint managers and agents, enter into and execute all contracts and instruments in carrying on the business (and that provision would certainly authorize the making or accepting bills of exchange,) and to divide the net income amongst the creditors in ratable proportions,—provided that, in distributing such income, it shall be deemed and taken to be the property of the Smiths, with power for the majority in value of the joint creditors, at a meeting, to alter the trust, and make rules as to the discontinuance of the business and the management of it; and ultimately, after paying the debts incurred in the business so carried, to divide the residue of the moneys in ratable proportions amongst the creditors, with the same provision that the moneys are to be taken to be the property of the Smiths. The creditors are to receive the provisions of the deed in full discharge of their debts. They covenant not to sue; and the deed is to be void unless executed by six-sevenths of the creditors, in number and value." 9 C. B. (N. S.) 98. The case was tried before Jervis, C. J., and a verdict rendered for the defendants. Subsequently a rule to show cause why a

verdict should not be entered for the plaintiff was made absolute by the common pleas (Jervis, C. J., and Willes and Williams, JJ.) The decision was founded upon prior decisions which the judges erroneously considered as controlling. 18 C. B. 617, 638. On appeal to the exchequer chamber the judges were equally divided; Watson, Bramwell, and Martin being in favor of reversal, and Coleridge, Erle, and Crompton, JJ., being in favor of affirmance. 3 C. B. (N. S.) 523. On appeal to the house of lords the judges were requested to give their opinions, and here again they were equally divided; Blackburn, Crompton, and Williams, JJ., agreeing that the defendants were liable, and Channell, B., Pollock, C. B., and Wightman, J., holding that there was no liability. The law lords (Lord Chancellor Campbell and Lords Brougham, Cranworth, Wensleydale, and Chelmsford) then proceeded to render final decision; and they were unanimous in the opinion that the judgments of the exchequer chamber and of the common pleas should be reversed. Out of 19 judges, including the law lords, 8 were in favor of the plaintiff's right to recover, and 11 were opposed to it. Of the 8 who thought that the action would lie, only 5 placed their judgments on independent reasoning; all 3 of the judges in the common pleas having considered themselves bound by prior adjudications. The other five appear to have been much influenced by such adjudications, though confessedly not strictly in point. The 11 judges who were of opinion that the action would not lie discussed the question on principle, and their reasoning seems to us unanswerable. In the house of lords there was no dissent at all. So that the decision in the case is the unanimous judgment of the highest tribunal known to English law. Were we at all in doubt as to the correct view of this matter, the opinion of such a tribunal, promulgated after such exhaustive consideration of the question by many great judges, would suffice to turn the scale. Lord Wensleydale said at page 100: "If a creditor were to agree with his debtor to give him time to pay his debt till he got money enough out of his trade to pay it, I think no one could reasonably contend that he thereby made him

his agent to contract debts in the course of his trade; nor do I think that it would make any difference that he stipulated that the debtor would pay the debt out of the profits of the trade. The deed in this case is merely an arrangement by the Smiths to pay their debts, partly out of their existing funds, partly out of the profits of their trade; and all their effects are placed in the hands of the trustees, as middlemen between them and their creditors, to effect the object of the deed,—the payment of their debts. It is placed in the hands of the trustees, as the property of the Smiths, to be employed as the deed directs, and to be returned to them when the trusts are satisfied. I think it is impossible to say that the agreeement to receive this debt so secured, partly out of their existing assets, partly out of the trade, is such a participation in profits as to constitute the relation of principal and agent between the creditor and the trustees. The trustees are certainly liable, because they actually contract by their undoubted agent; but the creditors are not, because the trustees are not their agents." Lord Cranworth said at page 91: "I do not propose to consider in detail all the provisions of the deed. I think it sufficient to state them generally. In the first place, there is an assignment by Messrs. Smith, to certain trustees, of the mines, and all the engines and machinery used for working them, together with all the stock in trade, and in fact all their property, upon trust to carry on the business, and, after paying its expenses, to divide the net income ratably amongst the creditors of Messrs. Smith as often as there shall be funds in hand sufficient to pay one shilling in the pound; and, after all the creditors are satisfied, then in trust for Messrs. Smith. Up to this point, the creditors, though they executed the deed, are merely passive; and the first question is, what would have been the consequence to them of their executing the deed, if the trusts had ended there? Would they have become partners in the concern carried on by the trustees merely because they passively assented to its being carried on upon the terms that the net income (*i. e.* the net profits) should be applied in discharge of their demands?

I think not." Channell, B., said at page 70: "I think that no new trade or concern was carried on. It seems to me that it was the old concern, though carried on under the management of trustees, and under a new name; that it was to be carried on by parties in whom the Smiths, on the one hand, and the general body of creditors on the other hand, placed confidence (that is to say, by the trustees,) but that it was the business of the Smiths; that the creditors who had rights against the Smiths, which they might have enforced by legal proceedings, in effect, in considera- tion of the arrangement that the trade for the future should be carried on by the trustees, and not under the management of the Smiths, agreed to forego their ordinary rights as creditors against their debtors, and to receive a sum equivalent to what was the amount of their debts, when the net profits (that is, as I under- stand, profits made after satisfying all new debts) should enable the trustees to pay the parties of the third part such equivalent sum. The business was, I think, the business of the Smiths, carried on with a view to their ultimate benefit; and the fact that the creditors had power to put an end to the management by the trustees, and to discontinue the business, and to require the property—the capital—to be sold and divided amongst them in satisfaction or part satisfaction of moneys which, according to my understanding of the deed, and by virtue of the deed of arrangement, became a charge upon the property of Messrs. Smith, does not vary the case so as to constitute the creditors of the third part partners in the business. The creditors of the third part had no power, I think, by virtue of the deed, to take upon themselves the management of the business." Pollock, C. B., said at page 84: "If a firm were in difficulties, and a person proposed to assist them by a loan of money, engaging to receive payment out of the profits only, and to make no claim in the event of there being no profits, but stipulating that one-half of the profits should be applied as they arose in payment of his debt, and that he should have power to see that this was done, would he thereby become a partner, and liable for all debts con-

tracted subsequently to this arrangement?　On this very simple state of facts there may possibly arise a difference of opinion, but I think a large majority of all lawyers and commercial men would decide at once that assistance so offered and so accepted would not make the lender of the money a partner as to third persons.　\* \* \*　The effect of the deed appears to me to continue the old concern, rather than to create a new one, but to put it under the management of the trustees, who are a sort of guaranty or security that the real contract shall be carried into effect, who are to protect the interests of Messrs. Smith, on the one hand, from whom all their authority emanates, and of the creditors, on the other, so that the creditors who give up their claim on the capital, provided they are paid out of the profits, shall have the profits so applied, if any there be.　The debts of the creditors are not extinguished altogether; for, if the concern is unprofitable, the creditors may require it to be given up, and the property to be sold and divided among them.　The trustees act under a power of attorney from Messrs. Smith, and they are to continue to carry on the same business, to pay all rent and charges, but they are to apply the net income (of course, after satisfying all new creditors) in payment of the claims of the old creditors."　See, also, *Owen* v. *Cronk*, [1895] 1 Q. B. 265.

The judgment of the District Court is affirmed.　All concur.

### ON REHEARING.

Counsel for appellant call our attention to a fact not referred to on the argument of this case; *i. e.* that the assignor himself is made a party defendant, and has demurred to the complaint.　As the court below overruled the demurrer as to him also, we must, to sustain its action, hold that he, as well as his creditors, is not liable for the property sold the trustee while such trustee was administering the trust.　Such is our view.　The instrument created a trust which placed the control of the property and the business entirely beyond the assignor so long as the trust should continue.　The trustee doubtless was accountable in equity for the faithful discharge of his duties as such trustee, and a court of

equity might in a proper case interfere. But while the business was being managed by the trustee he was absolute master thereof, —as much as though he himself had a beneficial interest therein. The assignor could not dictate how the trustee should conduct it, what purchases or sales he should make, or have the slightest voice in its affairs. It was the business of the trustee, so long as the trust continued; the assignor having only an indirect interest in the successful management thereof. He was not the proprietor of the business, and the trustee was not his agent. It is always the case that the trustee has no interest in the management of the affairs confided to him by the trust instrument, and that the *cestui que* trust is the only person beneficially interested therein. And yet it has never been held or even supposed that the beneficiary is liable for debts contracted by the trustee in so handling the trust property as to create an income for such beneficiary. The assignor by the trust deed parted with the ownership of the property, and all control over the business he had been carrying on. While that instrument remained in force he was in precisely the same position, with respect to the fund and the business which the trustee was conducting therewith, as if a third person had created the trust, and had provided that, after the trustee had paid thereout certain debts of the defendant, the trustee should transfer all the property to defendant. In the supposed case he would be interested in the success of the business, and yet it would not be his business. He would have no control over it, and therefore would not be liable for debts incurred in the prosecution thereof. There is no analogy between an instrument which establishes an agency and one which creates a trust. Where an agency exists, the principal may at any moment interfere; and at all times he is, in legal contemplation, in full control of the business. Not so when a party has parted with the title to his property, and has created a trust which vests in such trustee the right to manage the business as the proprietor thereof, he being accountable to the beneficiary, not as his principal, but as a mere *cestui que* trust under the terms of the trust

instrument. There is no hardship in the doctrine that the beneficiary is not liable in such a case. The person with whom the creditor deals (*i. e.* the trustee) is himself personally liable. If such creditor is unwilling to trust him, such creditor can refuse to sell him on credit. And in a proper case the creditor may resort to the trust estate itself for his pay. It would indeed be an anomaly in the law if one could be held responsible for goods that he had not purchased or agreed to pay for, and which were not sold to his agent, but were purchased by a third person to use in a business carried on by such third person; the defendant having no control thereover. We hold that the assignor himself is not liable, and therefore the judgment heretofore rendered will not be disturbed.

(75 N. W. Rep. 914.)