## Hewitt v. Phelps.

1. From the decree of a State court rendered in 1874 an appeal was in 1876 taken to the Supreme Court, where, in 1877, the decree was reversed and the cause remanded, "with leave to both parties to amend pleadings as they may be advised, and to take testimony, and for an account to be taken in accordance with the views contained in the opinion" of the court. On the day after the mandate was received in the court of original jurisdiction the defendant filed his petition, praying that, by reason of the citizenship of the parties, the cause be removed to the proper Circuit Court of the United States. *Held*, that neither the date when, nor the stage of the cause at which, the petition was filed precluded the removal under the act of March 3, 1875, c. 137. *Jifkins* v. *Sweetzer* (102 U. S. 177) distinguished.

2. A., and B., his wife, conveyed her separate property to a trustee upon trust for her use during her life, and in remainder in fee for the use of her children living at the time of her death. The deed reserves to her the power to sell and exchange the property, and declares "that the trustee is to permit A., as agent for the trustee, and as agent and trustee for said B. during her life, and as agent and trustee for her children after her death, to superintend, possess, manage, and control the property for the benefit of all concerned." The trustee was not to be responsible for the acts or conduct of A. The latter was, however, for the purposes of the deed, to be a co-trustee, but neither had power to charge the property for any future liability beyond the support of A. during his life. A. survived B. and died insolvent. A bill was filed against the trustee and the child of B., alleging that upon A.'s order the complainant had advanced moneys and furnished supplies which were used for the benefit of the trust estate, and praying that it be subjected to the payment of the claim. *Held*, that the bill was properly dismissed.

APPEAL from the Circuit Court of the United States for the Southern District of Mississippi.

The facts are stated in the opinion of the court.

*Mr. William L. Nugent* for the appellants.

*Mr. James Z. George, Mr. Charles W. Clarke,* and *Mr. E. Jeffords* for the appellees.

Mr. Justice Matthews delivered the opinion of the court.

Hewitt, Norton, & Company, the appellants, filed their bill in equity, April 17, 1869, in the Chancery Court of Washington County, Mississippi, against Phelps and wife, the appellees, and Jonathan Pearce, praying that certain real estate in that State, which had been conveyed by Sarah Vick to Pearce upon

certain trusts, and of which Mrs. Phelps was the sole benefi-
ciary, be charged with certain sums, which the appellants
allege they had advanced to the trustee, and for which they
claimed that the trust estate was liable.

The appellees were served with process; Pearce was
brought in by publication. The cause having been put at
issue, the bill was, for want of equity, dismissed on final hear-
ing, Nov. 7, 1874. From this decree an appeal was taken,
but not until March 30, 1876, when it was thus removed to
the Supreme Court of the State. It was disposed of in that
Court May 21, 1877, by a decree reversing the decree of the
court below, and remanding the cause, " with leave to both
parties to amend pleadings as they may be advised, and to
take testimony, and for an account to be taken in accordance
with the views contained in the opinion " of the court, which
is to be found reported under the name of *Norton* v. *Phelps*,
54 Miss. 467. The mandate of the Supreme Court was filed in
the Chancery Court of Washington County, June 7, 1877, and
on the same day a petition for the removal of the cause to the
Circuit Court of the United States for that district was pre-
sented by Phelps and wife, on the ground that at the time of
the commencement of the suit they were citizens of Kentucky,
and had continued so to be at all times since, the plaintiffs
during the same period being citizens of Louisiana, which was
granted, bond given and approved, and transcript filed in the
Circuit Court on Aug. 4, 1877. On Nov. 20, 1877, the ap-
pellants moved to remand the cause, which the Circuit Court
refused to do. This ruling of the court is first assigned for
error under the present appeal.

The contention of the appellants is that the Circuit Court
had no jurisdiction to proceed with the cause, because, first,
the suit was not pending at the time of the passage of the act
of March 3, 1875, c. 137. nor thereafter brought, and, there-
fore, not within the purview of that act; and, second, because,
at the time the removal was effected, the trial of the cause in
the State court had already taken place, or at least begun and
was in progress, whereas the act requires that the petition for
removal shall be filed before the trial thereof.

In our opinion neither of these positions is tenable. Whe-

ther, after final decree and before appeal is perfected, a pur-
chaser of the subject of the suit is affected with the notice of
*lis pendens* may be a question; although a distinction in this
respect is made by some of the authorities between an appeal
in equity and a writ of error, the latter being considered a
new proceeding, not pending until service of citation, while
the former is regarded as a step in the progress of the cause.
But, in contemplation of the act above mentioned, there are
and can be but two classes of suits: one, those pending at the
time of its passage; the other, those thereafter brought.   Of
course, a suit terminated has ceased to be a suit.   Confessedly
the present is a suit, and could not be said, at the time the act
was passed, to have ended, although the decree was final in
respect to the Court of Chancery which had rendered it, and
would have become so between the parties if no appeal had
been taken within the time limited by law.   But until that
period had elapsed it was still a *lis pendens*, in the sense that
the party against whom the decree had been rendered had the
right by an appeal further to prosecute it.   It was not the
beginning of a new suit: it was but one additional step in
the progress of an existing one.

The second ground of exception to the removal of the cause
is maintained in argument upon the authority of *Jifkins* v.
*Sweetzer* (102 U. S. 177); but that case does not govern this.
That decision turned upon the fact that the judgment of the
Supreme Court of the State "disposed of the case finally upon
its merits, and nothing remained to be done but to continue the
hearing already begun until the necessary accounts could be
taken, and the details of a final decree settled."   But here, al-
though the Supreme Court of Mississippi passed in its opinion
upon the merits of the case, as disclosed by the record then be-
fore it, nevertheless, in remanding the cause, "with leave to both
parties to amend pleadings as they may be advised, and to take
testimony," the whole matter was open and at large, as though
the cause had never been at issue; and the clause providing
"for an account to be taken in accordance with the views con-
tained in the opinion rendered herein," must be understood as
qualified by the previous part of the order, and as obligatory
upon the Court of Chancery only as a declaration of general

principles, to be applied as the facts should thereafter appear. It was not a judgment which operated as an estoppel between the parties. It was neither final nor conclusive. In point of fact, after the removal of the cause into the Circuit Court the parties availed themselves of the leave granted, and filed new and amended pleadings. The cause then stood in that court just as it would have stood in the State court, but for the removal; *i. e.*, for a rehearing upon the merits, and not for the purpose of merely executing the judgment of the appellate court, as in the case of *Duncan* v. *Gegan*, 101 U. S. 810. Being properly removed, the parties are subject to that administration of law which is approved in the judicial tribunals of the United States, whose jurisdiction is thus invoked, as was held in *King* v. *Worthington*, 104 id. 44.

The Circuit Court having acquired jurisdiction, on final hearing, upon demurrer, dismissed the bill. We are now required by the appeal to review that decree.

The allegations upon which the alleged equity of the appellants is supposed to arise are, in substance, as follows : —

On May 4, 1850, Sarah Vick and Henry W. Vick, her husband, executed and delivered to Jonathan Pearce a deed, conveying to him all the property which she then owned as separate property, including a plantation, slaves, utensils, and stock in Washington County, Mississippi, the subject of the present suit, upon trust, nevertheless, for her sole and separate use during her life, and in remainder in fee for the use of her children living at the time of her death. It was provided that the proceeds of the property in Washington and Issaquena Counties, and such parts of it as might be sold, should be applied to the payment of a debt due to the Bank of the United States, after the payment of which, the proceeds, over what was necessary to support the plantation and family, were to be invested for the benefit of all her children living at the time of her death. It was also provided that she should retain possession of the property during her life, with power to sell or exchange any part, but any property received in exchange to be subject to the trusts ; " provided further," the deed continued, " that said trustee is to permit the said Henry W. Vick, as agent for said trustee, and as agent and trustee for said Sarah

Vick, during her life, and as agent and trustee for her children after her death, to superintend, possess, manage, and control said property for the benefit of all concerned: said Henry W. Vick is to have power to sell and exchange said property after the death of said Sarah Vick, and apply the proceeds to the payment of the debt due to the trustee of the Bank of the United States; or, if the said debt is paid, the proceeds of the debt to be reinvested and be subject to the trusts of this deed." Provision is then made for applying a fund due to her from property in the hands of Colonel Durden, held by him in trust for creditors of Colonel Vick, to the payment of certain debts due from Henry W. Vick; but, it is added, "all the debts (aforesaid) to be paid by Colonel Vick, if he is able to do so, and it is only in case he is not able that it is to be paid out of said fund; provided, further, that said property is always to stand charged for the payment of such amount for the liberal support and maintenance of the said Henry W. Vick during his natural life." The concluding clause in the deed is as follows: "My intention is, that said Henry W. Vick shall be regarded for the purposes of this deed, not merely as an agent, but also a co-trustee, and I desire he may be required to give no security for the performance of his duties, and the said Jonathan Pearce is not in any manner to be responsible for the acts or conduct of said Henry W. Vick."

Henry W. Vick carried on the business of the plantation until he died in 1861, when Pearce, as trustee, took possession of the trust property; Mrs. Vick, having previously died, leaving no issue surviving her, except Mrs. Phelps, one of the appellees.

Hewitt, Norton, & Co., commission-merchants in New Orleans, claim a balance due to them from Pearce, as trustee, of $7,631.16, which they insist is a charge in equity upon the trust estate. From statements of the account, contained in the bill and amendments and exhibits, it appears that the whole of this balance resulted from transactions with H. W. Vick, while conducting the business of the plantation, prior to April 25, 1861. In a petition addressed by Pearce to the judge of the Probate Court of Washington County, Nov. 28, 1865, and made

an exhibit to the original bill, he states that those transactions as resulting in a balance of $6,145.99, due to the appellants, which, with $4,231.82, accruing from transactions with himself as trustee, make $10,377.81, the amount of the balance of the account which they state as due them June 30, 1862. The subsequent credits were all for moneys received from Pearce, and reduced the balance, Oct. 3, 1866, to the amount claimed in the bill, being less than the amount due at the death of Vick, with interest added. This analysis of the accounts shows that the whole claim is covered by the transactions with Vick, and is not embraced in those had with Pearce, all the debts incurred by the latter being cancelled by payments made by him. It is alleged, however, that the balance due at Vick's death was carried forward in account with Pearce as a charge against him, with his consent and approval; and that when he took possession of the trust estate he received and used for the benefit of the estate, clothing, provisions, and other supplies which had been furnished or paid for by the firm upon Vick's orders; and it is charged in the bill " that all the items charged in your orators' said account for money loaned and supplies furnished were necessary and proper under the deed of Sarah Vick, and the said money and supplies were applied to the use and benefit of the trust estate, and upon a settlement of the accounts of the said Jonathan Pearce he would have had the right to charge the same against the said estate, and the balance due to him by said estate would have been and would now be, equal in amount to the debt now claimed by your orators," &c. It is also alleged that Henry W. Vick, at the date of the deed, was a man of no means, property, or credit; that he continued in the same condition until his death; and that Pearce, when he took possession, was in the same financial condition, and a resident citizen of the State of Kentucky.

At the death of Mrs. Vick her daughter, now Mrs. Phelps, was unmarried and a minor, and Jonathan Pearce became her guardian. On Nov. 28, 1865, he filed his final account as guardian and trustee in the Probate Court of Washington County, showin a balance due to the estate from him of $2,939.40, and porting, as heretofore stated, the account

between himself, as trustee, and the appellants. His account as guardian was settled by an order of the court in January, 1866, and he received credit for an allowance by way of compensation for his services in excess of the balance due from him. It is charged in the bill that at this settlement Pearce admitted the balance to be due to the appellants as claimed, and that he surrendered possession to Phelps and wife upon an understanding and agreement with them that the debt should be paid out of the cotton crop then growing on the lands.

It is manifest that the deed of trust from Mrs. Vick to Jonathan Pearce does not confer upon him or upon Henry W. Vick any power to charge the estate directly with the payment of any sums of money for any purpose whatever, with the single exception of a personal support and maintenance for the latter. The grantor charges it with the payment of certain specified obligations, and there is no evidence of an intention to permit it to be incumbered by the trustee or by Vick.

It is to be noted also that Jonathan Pearce is a trustee merely of the title, without any active duties in regard to the estate. The power to sell or exchange during his own lifetime the grantor reserves to herself, and after her death directs that it be exercised solely by her husband surviving her. All powers to superintend, possess, manage, and control the property are conferred exclusively upon Henry W. Vick, "as agent for said trustee and as agent and trustee for said Sarah Vick during her life, and as agent and trustee for her children after her death;" but to be regarded for the purposes of this deed, not merely as an agent, but also as a co-trustee. "And the said Jonathan Pearce is not in any manner to be responsible for the acts or conduct of said Henry W. Vick." So that, while Pearce was trustee of the title merely, Vick was a co-trustee, having no title or estate in the property, but charged with all the active duties of management. After the death of Mrs. Vick, Pearce's sole duty in regard to the trust estate was to convey the title to the surviving children. By these provisions the power of either to create a charge upon the trust estate seems to be effectually excluded.

It follows also from these provisions of the deed of trust, and the facts recited as to the origin and nature of the appellants'

account, that no equitable charge against the estate can be established through the supposed liability of Pearce. It is quite plain that he was never personally answerable for the obligations created by Vick, and his alleged assumption of the account may be rejected as incompetent to create any such liability upon his part. Neither his admission nor that of the appellees could, in contemplation of law, create any charge upon the estate; and, as trustee, he could not establish it as necessary to his own exoneration.

The appellants, then, can reach the estate only, if at all, through their claim against Vick. For this purpose he may be regarded as an independent trustee, authorized to do whatever was necessary and proper in the performance of his duty to superintend and manage the trust property. He was undoubtedly personally bound for all his contracts made in that character. The question is, Does his insolvency create an equity in behalf of the appellants, to reach the estate, for the benefit of which the advances are admitted to have been made?

On this point the law prevailing in Mississippi, and governing the case, was well declared, we have no doubt, by the Supreme Court of that State in *Norton* v. *Phelps*, 54 Miss. 467, 471: "In the case of *Clopton* v. *Gholson* (53 id. 466) we announced the principles applicable to this case. These are, that persons dealing with a trustee must look to him for payment of their demands, and that, ordinarily, the creditor has no right to resort to the trust estate to enforce his demand for advances made or services rendered for the benefit of the trust estate. But, while this is the rule, there are exceptions to it; and where expenditures have been made for the benefit of the trust estate, and it has not paid for them, directly or indirectly, and the estate is either indebted to the trustee or would have been if the trustee had paid, or would be if he should pay the demand, and the trustee is insolvent or non-resident, so that the creditor cannot recover his demand from him, or will be compelled to follow him to a foreign jurisdiction, the trust estate may be reached directly by a proceeding in chancery."

The ground and reason for this rule are, that the trustee has an equity of his own, for reimbursement for all the necessary expenses to which he has been put in the administration of his

trust, which he can enforce by means of the legal title to the trust estate vested in him; and that his creditor, in the cases supposed of his insolvency or absence from the jurisdiction, may resort to the equity of the trustee, upon a principle of equitable substitution or attachment, for his own security. It would not apply against the trust estate in this case for the enforcement of a debt created by Vick, for the reason that he had no title to the property; but adopting it and applying it as though he had, it is equally plain that the appellants have established no right to the relief prayed for. What, at the time of his death, may have been the state of the account between the trust estate and Henry W Vick does not appear. There is no allegation on the subject in the record. For aught that appears, he may have had in his hands means enough belonging to the estate to satisfy all demands against it; he may, indeed, have been largely in debt to it. The case, in any of its aspects, clearly is not within the rule; and the effort to reach the estate through Pearce, instead of Vick, for the reasons already stated, must fail.

These are the grounds upon which the Circuit Court proceeded in the decree complained of. We find no error in the record, and the decree is accordingly

*Affirmed.*