HARRY G. AUSTIN, Appellee, *vs.* HARRISON PARKER *et al.* Appellants.

*Opinion filed April 24, 1925—Rehearing denied June 10, 1925.*

1. TRUSTS—*trustees must have express authority to bind trust estate.* A trustee cannot create a lien on the trust estate in favor of a creditor, or charge the trust estate even by his contract, without express authority by the instrument creating the trust; and the fact that the trustee may be indemnified for expenses and losses incurred in good faith does not in anywise create a direct liability on the part of the trust estate for the benefit of third persons dealing with the trustee.

2. SAME—*when right of action is against the trustee personally.* Except where the estate would be indebted to the trustee should he pay the demand, and he is insolvent or a non-resident, a trustee, or anyone standing in such relation, in contracting with third persons binds himself personally and not the trust estate, unless the trustee exacts an agreement from the person with whom he contracts to look to the funds of the estate exclusively, and in the absence of such language the word "trustee" is but *descriptio personæ.*

3. SAME—*when agreement for services does not bind common law trust.* Where the declaration establishing a common law trust with three trustees provides that the acts of the trustees may be performed by any two of them, a contract by one of the trustees' hiring the services of a party to secure the purchase of stock in an insurance corporation will not bind the trust estate even though the other trustees accepted the benefits of said party's services after they had been performed, there being no agreement, before the work was done, sufficient to charge the estate.

4. SAME—*when trust estate is not bound by acceptance of benefit of contract.* A trust.estate cannot, because it receives the benefit of a contract made by the trustees, be held liable to third parties upon a theory of implied liability.

APPEAL from the Third Division of the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. GEORGE FRED RUSH, Judge, presiding.

STEDMAN, KESLER & DINGLE, (JOHN A. LEITCH, of counsel,) for appellants.

CLELAND, LEE & PHELPS, (ROBERT G. PHELPS, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellee recovered a money decree against appellants, Harrison Parker, Seymour Stedman and George H. Wilkins, as trustees of the Co-Operative Society of America, (a common law trust,) for services rendered in procuring a controlling interest in an insurance company and a certain building in the city of Chicago. An appeal was taken from this decree to the Appellate Court for the First District, where it was affirmed, and that court issued a certificate of importance and allowed an appeal to this court.

The Co-Operative Society of America was created by a declaration of trust executed on or about February 20, 1919. The instrument creating the trust provided that its assets and business should be in charge of three trustees. It also provided for the issuance of certain certificates of beneficial interest which were widely sold to the public, the receipts of which sales constituted assets of the trust estate. The trustees at the time of the filing of complainant's bill were Harrison Parker, N. A. Hawkinson and John Coe. At the time of the trial Hawkinson and Coe had resigned and appellants Seymour Stedman and George H. Wilkins had been named as trustees and were made par-

ties defendant. After the decree was rendered Parker and Wilkins resigned and Edward C. Kessler and John Coe were made trustees. The latter appears to have been re-appointed. Neither Stedman nor Kessler was a trustee at the time of the supposed agreement with the complainant.

The instrument creating the trust gave to the trustees, collectively, full control and management of all matters involving the administration of the trust estate. It provided that they hold the legal title to its property, and gave them full right and power to alienate, mortgage or otherwise encumber or dispose of the real estate belonging to the trust estate, and power to employ the funds and other property of the trust estate at any time in the establishment and operation of grocery or other stores, wholesale or retail, in Chicago or elsewhere. The instrument also provided that the trustees, to the extent of the trust estate held by them, but not personally, should indemnify and hold harmless the beneficiaries, and such other persons as might be associated with them, against loss or liability by reason of any contract, obligation or liability entered into by them as trustees. They were also empowered to sue for and receive all moneys coming due to the trust estate, to prosecute or defend suits at law or in equity, to compromise, or refer to arbitration, claims in favor of or against the trust estate. They were given power, by unanimous consent of the trustees, to exchange stock or securities held by them in any corporation or trust, taking over the property of such corporation or trust by consolidation or otherwise. They were authorized to loan money to any corporation or trust of which they might own shares of capital stock, or embark in any lawful business, and subscribe for, purchase or otherwise acquire shares in the capital stock of any corporation or trust engaged in lawful business.

The eighth paragraph of the instrument creating the trust provided that "all acts to be done by the trustees including the alienation or encumbering of real estate, may

be performed by any two of the trustees, the acts or signatures of all three trustees not being necessary." By the sixteenth paragraph it was provided that in every written contract, order or obligation which the trustees should give, it was their duty to stipulate that neither the trustees nor the holders of the beneficial interest should be held to any personal liability by reason of such contract, and to convey notice in that language to third parties that the trustees were not dealing on their own responsibility as individuals, but as trustees in an express trust under the common law.

The facts as we gather them from the record are, that appellant Parker called upon one Craig, who conducted an employment agency, for assistance in securing a man to act as president of a small insurance company owned by this trust estate. Through Craig's efforts Parker and appellee, Austin, were brought together, and after discussing the matter with Austin, Parker decided not to develop this small insurance company, known as the Rockdale Insurance Company, but that Austin should endeavor to find a company which Parker and his associates could purchase. Austin's testimony is, that Parker in his dealings with him purported to represent the trustees, and pursuant to this agreement with Parker he investigated a number of different concerns and ultimately made a contract for the purchase of the controlling interest in the People's Life Insurance Company and in the Randolph Building Company, taking the contract in his own name. It appears that by an agreement with Parker he incurred liability for legal services. It is undisputed that as consideration for his services Austin was to be appointed president of the new insurance company when purchased. After Austin had made the contract for the purchase of the controlling interest in the insurance company and building, a dispute arose between him and Parker concerning the terms upon which Austin was to become president of the insurance company, by reason of which dispute the relations between them were terminated.

After Austin had procured a release from his contract of purchase of the stock referred to, appellants, as trustees of the Co-Operative Society of America, took over the stock contracted for by Austin at the terms upon which he was to purchase it, and he therefore claims that he is entitled to a money decree against the trust estate by reason of his services in securing the purchase of this stock.

There is nothing in the record which shows a meeting of the trustees or the express approval of Hawkinson and Coe, the other trustees, concerning the employment of Austin for the purposes for which Parker employed him. Austin testified that he was introduced to Hawkinson and Coe as the man who was putting over the stock deal for the trustees. This is vigorously denied by Coe. Hawkinson was not called as a witness. All three of the trustees participated in the subsequent purchase of the stock for which Austin had contracted. The record does not show that Coe and Hawkinson had anything to do with the contract existing between Parker and Austin, nor does it show that they ratified that contract, which was, as we have seen, that Austin was to receive the presidency of the new insurance corporation as compensation for his services in bringing about the deal. He was to receive as such president a salary of $25,000 per year and certain commissions on business done.

The circuit and Appellate Courts were evidently of the view that the trustees of the estate having later purchased for the estate the stocks contracted for by Austin, though after Austin had been relieved of his contract with the owners of such stock, the trust estate, by reason of having had the benefit of Austin's services, is under an implied liability to pay a reasonable fee for that service, which fee, together with expenses and attorneys' fees incurred by Austin, was fixed in the decree at $17,400. Appellants urge that this trust estate can be bound only by an express agreement of the trustees to subject the assets of the estate to liability; that in the absence of such express agreement the

trustees are personally liable on the contracts entered into by them, and this being so, a court of equity has no jurisdiction to enter a decree against the estate; that while a trust estate may be sued only in equity, that court has jurisdiction only where the contract is with the estate and not with the trustees.

The prayer of the bill in the instant case was, that the complainant be held to be entitled to receive from the trustees reasonable compensation for his services and that the trustees may be required to pay the same to the complainant. The decree entered on this prayer was as follows: "And the defendants as such trustees, are hereby ordered to pay the complainant, within ten days from the entry of this decree, the sum of $17,400."

A trustee cannot create a lien on the trust estate in favor of a creditor, or charge the trust estate, even by his contract, without express authority by the instrument creating the trust. Property of the trust estate cannot be used to reimburse the trustee for expenses or losses incurred unless he has used good faith and common prudence. If losses occur in cases where the trustee has exhibited this care he may be allowed to charge his accounts with whatever expense or loss he has been required to meet. (*Johnson* v. *Leman*, 131 Ill. 609; 2 Perry on Trusts,—6th ed.—art. 14, sec. 9.) The fact that a trustee is indemnified by the estate in this manner does not in anywise create a direct liability on the part of the trust estate for the benefit of third persons dealing with the trustee. The remedy of third persons is, in general, a remedy against the trustee, only. (*Johnson* v. *Leman, supra; Norton* v. *Phelps,* 105 U. S. 393.) An exception to this rule exists where the estate is either indebted to the trustee, or would be if he should pay the demand, and the trustee is insolvent or non-resident. In such case the trust estate may be reached directly by a proceeding in chancery. (*Wahl* v. *Schmidt,* 307 Ill. 331; *Norton* v. *Phelps, supra.*) If the trustee binds himself for the

317–23

benefit of the estate the contract is his personal contract though he describes himself as trustee. He is liable in an action at law, and a bill in equity will not lie against the trust estate in such a case, for the right of action is one not against the estate but against the trustee personally. *Wahl v. Schmidt, supra; Duvall v. Craig,* 2 Wheat. 45; *Taylor v. Mayo,* 110 U. S. 330.

The rule is well settled that a guardian, executor, administrator, trustee, or other person acting in such relation, in a contract with third persons binds himself personally, unless he exacts an agreement from the person with whom he contracts to look to the funds of the estate exclusively; and this is true regardless of whether the charge is one for which the trustee may be reimbursed from the trust estate, as that is a matter wholly between him and the beneficiaries of the trust. (*Bradner Smith & Co. v. Williams,* 178 Ill. 420.) In *Powers v. Briggs,* 79 Ill. 493, the trustees of a church gave a note for the payment of a church organ. The note recited that they, as "trustees of the Seventh Presbyterian Church," promised to pay the sum specified. It was signed by four trustees over the designation of their title. It was there held that though the statement that they were trustees of the Seventh Presbyterian Church appeared in the body of the note and the word "trustees" was appended to their signatures, there were no words in the instrument implying an undertaking on the part of the corporation, and that it is not to be assumed that it was acting by or through the trustees. The language of the note indicated that the trustees, and not the corporation, promised to pay. To the same effect is *Dunham v. Blood,* 207 Mass. 512. In the absence of language in a contract by which the parties specifically agree that the third party shall look to the trust estate, alone, for his compensation, the word "trustees" is but *descriptio personæ. Trustees of Schools v. Routenberg,* 88 Ill. 219; *Nolin v. Mooty,* (Ga.) 113 S. E. 814; *Schuling v. Ervin,* 169 N. W. 686.

In this case it does not appear by the bill or the evidence offered that either Parker, or he and his co-trustees, Hawkinson and ꞏCoe, stipulated with Austin that the trust estate should be bound. Both Parker and Coe testified there was no meeting of the trustees or act ratifying or authorizing the negotiations with Austin and that the trustees made no contract with Austin. The contract between Parker and Austin was that Austin was to be president of the new insurance corporation when taken over. There was no contract by which either Parker, the trustees or the estate agreed to ꞏpay Austin any sum of money for his services. The only ground, therefore, upon which Austin could recover anything from anybody for his services is that there was an implied promise to pay him a reasonable fee. The circuit and Appellate Courts held the estate liable on *quantum meruit* under an implied liability arising because the estate got the benefit of his contract. The evidence does not show an express ratification of this contract by the trustees. There was no agreement sufficient to charge the estate before the work was done. The most that could be said of the contract was that it was a charge against Parker or the trustees personally or individually.

A trust estate cannot, because it receives the benefit of a contract made by the trustees, be held liable to third parties upon a theory of implied liability. It is, as we have seen, only where the estate would be required to pay the trustee if he paid the claim, and the latter is insolvent or non-resident, that the estate can be directly held in a proceeding in chancery. (*Wahl* v. *Schmidt, supra; Norton* v. *Phelps, supra.*) No such case appears here. The evidence does not show the contract to have been one binding the trust estate to pay Austin anything. Whether he has a valid claim against Parker or any other of the trustees ꞏis not before us.

The judgment of the Appellate Court and the decree of the circuit court are therefore reversed.

*Judgment reversed.*