Equitable Trust Company, Appellee, v. L. R. Taylor, Appellant.

Gen. No. 31,296.

1.  TRUSTS—*when erroneous construction of trust agreement by trustee a mistake of law.*  Where one of several trustees under an assignment for the benefit of creditors, which does not authorize individual action by the trustees, borrows money from a trust company on a collateral note signed with the debtor's name, per the trustee as trustee, and the trust company has notice of the trust agreement and knowledge of its terms, the agreement being also referred to in the note, and the money so procured is used for the purposes of the trust, the erroneous assumption of the trustee and of the trust company that a provision in the agreement authorizing the trustees, for any purpose necessary to carry into effect the objects of the trust, to sign the debtor's name, authorized the trustee to execute the note in question was a mistake of law.

2.  TRUSTS—*when trustee not liable for breach of implied warranty of authority.*  Where a trustee executes a note as trustee which it is beyond his power, under the trust agreement, to execute and, at the time, the payee has full knowledge of the nature and extent of the trustee's express written authority, the payee cannot hold the trustee liable on the ground of a breach of an implied warranty of authority.

3. NEGOTIABLE INSTRUMENTS—*stipulation against personal liability as essential to protect trustee maker.* To protect himself from individual liability on a note which he signs for the benefit of his trust, a trustee must stipulate that he shall not be personally responsible.

4. NEGOTIABLE INSTRUMENTS—*sufficiency of stipulation to relieve trustee from personal liability.* Where a trust agreement contains a provision that none of the trustees shall be personally liable in carrying out any term thereof and the payee of a note, signed by the trustee as trustee and for the purposes of the trust, is fully advised of the terms of the agreement, which is also specifically referred to in the note, the trustee will be held, in an action on the note by the payee, to have stipulated against personal liability.

5. APPEAL AND ERROR—*when judgment of nil capiat proper on reversal for error of law.* Upon a judgment for plaintiff being reversed for errors of law and not of fact, a judgment of *nil capiat* will be entered in the Appellate Court against the plaintiff.

Appeal by defendant from the Circuit Court of Cook county; the Hon. DAVID M. BROTHERS, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1926. Reversed and judgment here. Opinion filed May 17, 1927. Rehearing denied May 28, 1927.

D. W. PARKER, for appellant.

WINSTON, STRAWN & SHAW, for appellee; HAROLD A. SMITH, of counsel.

MR. JUSTICE FITCH delivered the opinion of the court.

The question presented by this appeal is whether under the circumstances shown by the evidence the defendant, L. R. Taylor, is personally liable on a promissory note for $1,000 payable on demand to the order of the plaintiff and signed "Wm. Goyette, per L. R. Taylor, Trustee."

Goyette, a building contractor, was possessed of assets valued at $6,218.48, most of which were accounts receivable, some on completed contracts and others on unfinished contracts. He owed $7,425.45 to 22 creditors and was unable to pay them. Thereupon his creditors appointed a committee consisting of Taylor and two other creditors, who, on May 4, 1922, entered

into a written agreement with Goyette, in the nature of a voluntary assignment for the benefit of creditors.

By the terms of this agreement Goyette assigned all his property to the creditors' committee in trust, and it was provided that they should convert the assigned property into money and "pay the creditors"; that Goyette should "continue in his present business" and complete his unfinished contracts under the direction of the creditors' committee, but "shall incur no further liabilities" without their consent, and that "all contracts to be let" must be first submitted to them for their approval; that he would "personally attend to the collection of all accounts" and immediately deliver the proceeds to them, to be used in carrying out the purposes of the agreement; that he would assign all his contracts and mechanics' liens rights to them, and should receive from them a weekly salary for his services; that "out of the proceeds realized from this trust," the committee should "devise ways and means to provide for and pay the payroll of the business of this trust" and pay the overhead and current expenses, "but it is expressly understood and agreed that said parties of the second part in no way assume or are obligated personally in carrying out this or any other provision of this agreement."

The agreement further provides that Goyette constitutes and appoints the creditors' committee "his true and lawful attorney, irrevocably, with full power and authority to do all acts and things which may be necessary in said premises to the full execution of the trust hereby created," and to sign his name "to any instrument in writing whenever it shall be necessary so to do to carry into effect the object, design and purpose of this trust." It was further stipulated that the specified 22 creditors should be entitled to a dividend of 10 per cent as soon as received by the trustees, but that the latter should always keep on hand a surplus of $300 for emergencies.

On June 24, 1922, Taylor, accompanied by Morris Frisch, the attorney for the creditors' committee, called at defendant's bank, showed a copy of the trust agreement to William A. Nicol, defendant's cashier, and asked for a loan of $1,000. The cashier testified that the trust agreement "was presented to us by Mr. Taylor and his attorney, and on the strength of that document and the note that he signed, we made the loan of $1,000." He also testified that after reading the copy of the trust agreement, he prepared the note for Taylor to sign, and saw him sign the name "Wm. Goyette, per L. R. Taylor, Trustee," that the other two members of the creditors' committee were not present, and that he (Nicol) "was willing to accept it (the note) in the form it was signed," and understood "that Mr. Taylor was acting as one of the trustees" named in the agreement.

The note is in the form of a collateral note and the trust agreement is referred to on the face of the note in the following language (written in the blank space ordinarily used to describe the collateral deposited), which the cashier testified was written on the note before it was signed: "Copy of Trust agreement fr Morris Frisch atty 62 N. Clark St."

Taylor had a personal bank account with defendant's bank at that time, but a new account was opened in the name of "Wm. Goyette, per L. R. Taylor, Trustee," to which account the proceeds of the loan were credited and from which all were later drawn out on checks signed by Taylor in that form. It is not claimed the proceeds were not used by Taylor for the purposes of the trust. The note shows indorsements of interest paid each month following the date of the note to and including July 1, 1923. The cashier testified that "we charged the interest to Mr. Taylor's personal account one month, and when he objected we credited it back to his account." Taylor testified that he did not know that interest had been thus charged to his personal

account until he received his bank statement, and then he immediately telephoned to the plaintiff's cashier that he "was not personally liable and for him not to charge the interest to my account."

These facts are uncontradicted. Plaintiff's cashier and the defendant, Taylor, were the only witnesses. The case was tried by the court without a jury, and the court entered a finding and judgment for the plaintiff.

There is a provision in the trust agreement requiring "all checks or other evidence of payment made in carrying out the purposes of this agreement" to be signed by Goyette and countersigned by Taylor, but it is not claimed that this provision applies to the note in question. There is no other provision authorizing any one of the creditors' committee to act alone, and it is contended that for this reason Taylor acted without authority when he, alone, signed Goyette's name, "per L. R. Taylor, Trustee," to the note. Conceding this to be true, the question presented is whether defendant made himself personally liable because of that fact.

The plaintiff's representative, Mr. Nicol, knew that the only authority Taylor had to sign Goyette's name to a note was set forth in the trust agreement. He knew that by the terms of the trust agreement, the creditors' committee were authorized to act not only as trustees for the creditors, but that "for any purpose necessary to carry into effect the objects of the trust," they were also authorized, as Goyette's agents, to sign his name to a promissory note. It was by virtue of this clause of the trust agreement that Taylor assumed to act when he signed the note in question. It is clear, therefore, that after Nicol had read the trust agreement, he, as well as Taylor, made the mistake of construing it to authorize Taylor alone to sign Goyette's name to the note. This was not a mistake of fact, but a mistake of law.

In *Seeberger v. McCormick,* 178 Ill. 404, an action was brought by a lessor to recover rent upon a lease made to the Market National Bank of Chicago, and signed, on behalf of the lessee, in the name of the bank, by Seeberger as its president and Cox, its cashier. The bank was organized and incorporated, but had not received a certificate of the comptroller authorizing it to transact business, and the organization was abandoned within a few months. It having been determined in another suit that the bank had no power to enter into the lease, suit was brought against Seeberger and Cox personally on the theory that they were personally liable *ex contractu* upon their implied warranty of their authority to execute the lease on behalf of the corporation. The court said: "The principle is one of agency, and that plaintiffs in error, as the agents of the corporation in making the contract of lease, by necessary implication asserted to the lessor that they were in fact authorized to cause the lease to be executed by the corporation. Where the contract is made in good faith and both parties are fully cognizant of the facts, and the mistake is one of law only, the result of which is to exonerate the principal from liability because the agent had no lawful authority to make the contract, it is clear that the agent cannot be held liable, either *ex contractu* or *ex delicto.*" In that case, because McCormick, the lessor, *did not know* that the bank was not authorized to do business when the lease was signed, Seeberger and Cox were held personally liable for a breach of the implied warranty of authority. In the present case, both parties were fully cognizant of all the facts, but were mistaken as to the legal right of Taylor to act alone in signing Goyette's name to the note. That mistake being one of law only, the result of which was to exonerate Goyette from liability because Taylor alone had no authority to execute a note in his name, it must be held, on the authority of the *Seeberger* case, *supra,* that Taylor is not person-

Equitable Trust Co. v. Taylor, 244 Ill. App. 345.

ally liable.  To put the matter in another form, there can be no recovery in this case on the theory of a breach of an implied warranty of Taylor's authority, because the nature and extent of his express written authority were fully known to the plaintiff when the note was executed.

Plaintiff also invokes the rule that when a trustee contracts for the benefit of his trust, he becomes personally liable thereon "unless it is specially contracted otherwise."  That such is the rule in this State does not admit of doubt.  It was so held in *Wahl v. Schmidt*, 307 Ill. 331, and in *Austin v. Parker*, 317 Ill. 348.  In the opinion filed in each of those cases the case of *Taylor v. Mayo*, 110 U. S. 330, is cited.  Part of the opinion in that case is as follows: "If a trustee, contracting for the benefit of a trust, wants to protect himself from individual liability on the contract, he must stipulate that he is not to be personally responsible, but that the other party is to look solely to the trust estate."  Nearly all the cases cited in plaintiff's brief on this subject contain similar or equivalent language.

The application of this rule to the facts of this case, however, does not help the plaintiff.  When the loan was applied for, defendant and his attorney made it clear to the plaintiff's representative that defendant was assuming to act only under the authority given by the trust agreement.  As the provisions of the trust agreement were discussed at the time and as the trust agreement is specifically referred to in the body of the note, and the loan was made "on the strength" of that agreement, the provisions of the agreement must be read into the note, when considering the question of defendant's personal liability.  When that is done, it is clear that as part of the contract with the plaintiff, defendant did, in fact, expressly stipulate that he is not to become "personally obligated" in carrying out any of the provisions of the trust agreement.  By so stipulating, defendant protected himself from in-

dividual liability on the contract; and this seems to have been the construction placed on the contract by both parties.

For the reasons stated, the judgment is reversed, and as such reversal is occasioned by errors of law and not of fact, a judgment of *nil capiat* will be entered in this court against the plaintiff.

*Reversed and judgment here.*

GRIDLEY, P. J., and BARNES, J., concur.