Otto Kerner, Attorney General of the State of Illinois,
v. William George, etc., et al.
Harper Moulton, Appellant, v. Merchants National
Bank of Aurora and George F. Barrett, Appellees.

Gen. No. 9,899.

Heard in this court at
the October term, 1943. Opinion filed December 28,
1943.

COBURN & COBURN, of Chicago, for appellant; LOUIS
T. HERZON, of Chicago, of counsel.

REID & OCHSENSCHLAGER, of Aurora, for certain ap-
pellee; FRANK R. REID, JR., of Aurora, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.
Fannie B. Henderson, late of Kane county, died
testate on May 29, 1931. Her last will and a codicil

thereto were duly admitted to probate by the probate court of that county, and letters testamentary were issued to William George as executor on June 30, 1931. The fifth paragraph of the will, out of which this controversy grew, provides:

"Fifth: I give, devise and bequeath all reversions and remainders, and all the rest residue and remainder of my estate, real, personal and mixed and wheresoever situated unto William George of Aurora, Illinois as Trustee for the purpose of establishing a home for old people, men and women—especially husbands and wives. The same to be in memory of my father William W. Bishop and my mother Julia A. Bishop, and to be known as the Bishop Memorial Home. The said home to be located on the farm now owned by me and North of the City of Aurora. Relying upon the judgment and discretion of my friend, William George, named as trustee herein, I request him to take all steps deemed necessary by him to carry out the provisions of this my will in establishing said Bishop Memorial Home, and to do so as soon as convenient after my decease."

The sixth paragraph authorized the executor to sell and dispose of all assets of the estate and reduce the same to cash, and to sell at such prices and to such persons as he should see fit, without obtaining the sanction or consent of any court.

On June 8, 1935, the attorney general filed a complaint in the circuit court of Kane county to remove George as such trustee, charging him with incompetency, mingling of his accounts as executor and as trustee, and losses to the estate from unauthorized investments. In July 1938, while the complaint was still pending, and undisposed of, George filed a petition setting up that he had been studying a plan for the construction and operation of the home, submitted by a group of experts in that field, doing business under the name of "Retirement Homes," alleging he was informed that they had spent the past four years in

accumulating data and formulating the plan; and praying for leave, as trustee, to enter into a contract with "Retirement Homes" under the terms of the plan. No action was taken on the petition, and on October 3, 1938, the court entered an order removing George as trustee, and appointing appellee, The Merchants National Bank of Aurora, as successor trustee.

Thereafter, on September 12, 1941, appellant, Harper Moulton filed his second amended intervening petition in the cause, hereinafter for convenience called the intervening petition, seeking specific performance by appellee bank, as successor trustee, of an alleged contract between appellant and the former trustee concerning the establishment and operation of the memorial home, an accounting by the successor trustee and payment to appellant of certain sums allegedly due him under the contract. On October 4, 1941, the circuit court entered an order granting appellees' motion to dismiss the intervening petition, for insufficiency, and this court dismissed an appeal therefrom because it was not a final and appealable order. Thereafter, in the circuit court, appellant elected to stand upon the sufficiency of the intervening petition, and on motion of appellees, the court entered an order striking it for insufficiency and dismissing it for want of equity, with judgment for costs against appellant. The cause is here a second time on his appeal from the latter order.

The question presented is whether the intervening petition states a cause of action against the trust estate. It alleges that the value of the trust property was in excess of $750,000, the greater portion of which consisted of improved and unimproved real estate, with liquid assets of approximately $100,000 in cash and convertible stocks and bonds; that the available liquid assets were insufficient in the establishment of the home as contemplated or intended by the testatrix and specified in her will; that because the price of real

estate was depressed it was deemed inadvisable and inexpedient to dispose of it at a forced sale; that George, as trustee, was invested by the will with the necessary powers and duties relating thereto, including each and every power of judgment and discretion concerning the establishment, maintenance and operation of the home, and pursuant thereto employed appellant to devise ways and means in best effecting the purpose of the trust, the successful maintenance and operation thereof and the suitable accommodation, maintenance and support of the greatest possible residents and occupants, all within the limits and limitations of the trust estate; that pursuant to such employment appellant caused an appraisement and survey to be made of all securities, real estate and all other avails of the trust; secured and prepared plans for the erection of suitable buildings, improvements and facilities; investigated, conferred and consulted with various persons relating to management of the home upon completion; conceived and perfected a publicity program, with the objects: (1) to interest large corporations to make reservations for their aged employees for a stipulated consideration payable by such corporation; (2) to obtain the good will and cooperation of divers social agencies as well as philanthropic persons, having in view the obtaining of funds to maintain aged persons having no income or funds; and (3) to interest and solicit other aged persons with ample income and funds to make reservations at the home for a stipulated entrance fee and maintenance fee; that petitioner interviewed and solicited certain banks and mortgage houses in connection with a first mortgage construction loan for approximately $250,000 secured by the real estate of the trust; that he spent approximately four years in such activities, and as a result he secured more than 30 reservations at $2,000 entrance fee, and $60 per month residence fee, all of which were approved by the trustee, George; that appellant advanced and spent

large sums of money, time and effort in connection with the trust, and that George, as trustee, agreed to compensate him "with an amount equal to 17% of all receipts and obtained by the trustee from the individual reservations and contributions secured by the petitioner," and also the right to assume the management, maintenance and operation of the home upon completion, subject to the approval of the trustee at all times; that the agreement was entered into in consideration of the services rendered during the four year period and the outlay by the petitioner of the expenses and costs incidental thereto; that in order to most conveniently effect the intent, purpose and object involved, it was agreed to organize a corporation to be known as the Bishop Foundation, Inc., and that the petitioner would assign all his rights, titles and interests to a similar corporate body, to be thereafter incorporated under the name of "Retirement Homes, Inc."

The intervening petition then sets out the filing of the petition by George, as trustee, for leave to enter into a contract with "Retirement Homes," the removal of George, as trustee, the appointment of appellee bank as successor trustee, and alleges the refusal of the latter to carry out the alleged agreement between the former trustee and the intervening petitioner; alleges the petitioner in good faith, under the style and name of "Retirement Homes" expended divers and necessary costs for office space, stenographers, clerks, phone service and other costs; that there is due petitioner for services for four years, $20,000; for commissions at 17 per cent on reservations procured, $11,138; and for costs and expenses advanced, $12,000; aggregating $43,138. It is also alleged that the petitioner made two collateral assignments of his interests to secure loans of $300 and $200, respectively. The copies of the assignments, attached as exhibits, purport on their face to be absolute.

Attached as an exhibit, specifically as the basis of appellant's claim, is a purported copy of an agreement between "Bishop Foundation, and Illinois Corporation not for profit, hereinafter referred to as the Foundation, and Retirement Homes, Incorporated, an Illinois Corporation hereinafter referred to as the Management." By adopting the purported agreement as the basis of this action, the intervening petition shows on its face that it was not an agreement between appellant and the former trustee; and by a further allegation it appears that appellant was to assign all his rights, title and interest in the matter to "Retirement Homes," so that, on the face of the petition, he would have no interest upon which a cause of action could be based. Neither the exhibit nor the intervening petition shows any date of the purported agreement, nor by whom it was executed on behalf of either of the alleged corporations, and there is no allegation that either of the alleged corporations was ever organized.

It was manifestly the intention of the testatrix that the trustee himself should assume the duties of establishing the home and take the necessary steps to accomplish that purpose. Appraising the assets would be a simple matter, requiring no considerable effort or length of time. Employing an architect would likewise be a simple matter, and there is nothing in the context of the will to justify the legal conclusion asserted by appellant that the testatrix intended to provide for adequate maintenance and support of the greatest possible number of residents and occupants within the limits and limitations of the avails of the trust estate, or that she intended to establish a boarding house for well to do occupants able to pay for the accommodations, with an expensive publicity campaign and an initial incumbrance of $250,000 on the real estate. Organizing a corporation to hire another

corporation to take over the duties of the trustee, with power in the hired corporation to hire the management and conduct the institution, with preliminary expenses of over $43,000 without any actual construction being begun, is so foreign and contrary to the manifest intention of the testatrix, and so unauthorized, that it could form no basis for a claim against the trust estate, and no court of equity would allow the trustee compensation for such expenditures.

The general rule is that persons employed by a trustee have no claim against the trust estate, but only against the trustee personally, and a trustee cannot create a lien on a trust estate in favor of a creditor, or charge the trust estate even by his contract, without express authority given by the instrument creating the trust. (*Wahl v. Schmidt,* 307 Ill. 331, 339; *Johnson v. Leman,* 131 Ill. 609.) There is no such authority in this case. Even if the trust estate received some benefit from the alleged services of appellant, which the intervening petition fails to show, it cannot, on that account, be held liable to appellant upon a theory of implied liability. It is only where the estate would be required to pay the trustee if he paid the claim and the latter is insolvent or nonresident, that the estate can be directly held in a proceeding in chancery. No such case appears here. The intervening petition does not show any contract binding the trust estate to pay appellant anything. The former trustee could not recover against the estate if he paid the claims. Whether appellant has a valid claim against him personally is not before us. (*Austin v. Parker,* 317 Ill. 348, 355.) The fact that the intervening petition alleges that George is insolvent is of no assistance to appellant in this case.

The order of the circuit court was correct and is affirmed.

*Order affirmed.*