(No. 28158.—

HOWARD F. BISHOP, Appellant, *vs.* HARLEY R. BUCKLEN, individually and as trustee, Appellee.

*Opinion filed March 21, 1945—Rehearing denied May 17, 1945.*

JOHNSON & SHORT, of Chicago, for appellant.

BELL, BOYD & MARSHALL, (DAVID A. WATTS, of counsel,) both of Chicago, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This court granted appellant leave to appeal from a judgment of the Appellate Court, First District, reversing

a decree of the circuit court of Cook county which awarded appellant a judgment against appellee, Harley R. Bucklen, individually and against the assets of a trust estate of which Bucklen was trustee, in the sum of $10,575. The Appellate Court directed that the second amended complaint be dismissed for want of equity.

Appellant, an attorney, on December 23, 1937, filed his complaint at law against appellee, Harley R. Bucklen, individually and as trustee of the Bucklen trust, to recover attorney's fees under a contract for services in a special assessment proceeding in connection with a contemplated State street subway. Appellee, Bucklen, by his answer, put in issue the material averments, regarding the alleged contract and the breach thereof. The cause was transferred to the chancery side of the court and tried before the chancellor. Appellant's complaint alleged he was employed by the trustees of the Bucklen trust, under a verbal contract, to defend a special assessment against two pieces of real estate located at 701-3 and 807-9 South State street, against which special assessments were levied to pay for the construction of a subway in South State street; that he spent a great deal of time in preparation for trial and that thereafter the special assessment proceedings were dismissed, due to his objections and attack upon the proceedings, and that the subway was afterward constructed as a public improvement without special assessments.

Appellee defended upon the theory that the contract of employment was not to defeat the assessment but to reduce it, consequently no fees could be earned for a defeat of the assessment proceedings, assuming his efforts had something to do with the ultimate dismissal of those proceedings. Appellee's answer also alleged that appellant's efforts in the subway special assessment case must, because of the contemporaneous trial of a condemnation case for the widening of State street north of the Chicago river,

have been quite limited in character, and that even if the contract were to defeat the subway assessment, appellant's efforts had no causal connection with the dismissal. It was also alleged that appellant represented interests in conflict with those of appellee in the subway assessment case and in the condemnation case, and further alleged that since appellant, an experienced lawyer, made his contract with trustees, concerning trust property, knowing them to be trustees, there was no intention that the trustees be individually liable.

In 1930, the city council of the city of Chicago passed ordinances designed to give the city a unified local transportation system with elevated and surface lines combined under single ownership. September 20, 1930, an ordinance was passed providing for the widening of North State street, north of the Chicago river, along the route of the proposed subway. Appellee owned no property within this latter proposed improvement. On December 15, an ordinance was passed levying a special assessment for the construction of a subway in State street from approximately Roosevelt road on the south, to Chicago avenue on the north, and for repaving the street. The unification ordinance was approved by a referendum and the city instituted in the superior court of Cook county, in 1931, a condemnation case, (hereinafter referred to as the widening case,) for the widening of North State street from the river to Chicago avenue, and, thereafter, a special assessment proceeding for the construction of the subway, (hereinafter referred to as the subway case,) covering property along the entire route of the widening project. Validity of those ordinances was upheld by this court in *People* v. *City of Chicago,* 349 Ill. 304.

At the time this contract was entered into, Harley R. Bucklen was cotrustee with Foreman State Trust and Savings Bank of the aforesaid properties. Later, upon the failure of the bank, appellee, Bucklen, became sole trustee.

February 4, 1931, William C. Miller, one of the trust officers of the Foreman bank, appellee, Bucklen, and appellant met, and appellant was employed to represent the trustees in the subway case. The only written memoranda of the conversations and employment are two letters, dated February 5, written by Miller to appellant, and his replies thereto. One letter is headed as follows: "Re: H. E. Bucklen Trust", and reads: "We handed to you yesterday notice from the Board of Local Improvements affecting property at 807-9 South State street in the sum of $22,500. This property is about a block south of Seventh street and may or may not be affected by subway openings. We feel that this is a matter for special consideration in that the building may be materially damaged by the building of the subway and possibly greatly benefited if openings are made at such a point as will be at or near this property. It is our understanding in conversation with you and Mr. Bucklen yesterday, that your service charge, including all court costs, all attorneys' fees, all fees of real estate experts, and any other items, shall be reasonable depending upon circumstances, the amount of time involved, etc., and in no event to exceed 25% of the savings or reduction of the assessment." The other letter, headed "Re: Quigley Trust Under Bucklen Will," related to property at 701-3 State street, and stated the assessment against that property to be $19,800. Otherwise it was in substance the same as the one just quoted. Both letters were signed by Miller as vice-president of the bank.

On February 17, 1931, appellant wrote Miller two letters, one with the heading "In re: H. E. Bucklen Trust," reading: "Referring to your letter of the 5th inst., in regard to the above entitled matter, I have looked after the objections in this case and will handle the matter in accordance with the terms outlined in your letter of that date. If the owner has a survey and plans showing the first story and foundations, particularly with reference to

whether there are caissons or floating foundations, depth, etc. with the elevation marks, it would be very helpful in preparing the necessary cross petition. * * * P.S.— Please advise the correct legal title—in other words, the exact name of the owner." The second letter of that date, headed "In re: Quigley Trust Under Bucklen Will," was in substance the same.

. Appellant testified he was employed by Bucklen and Miller to defeat the special assessment on a contingent-fee basis of 25 per cent. Miller testified in substance that appellant was employed to secure a reduction of the subway assessment, not to defeat the subway proceeding, for which he was to be paid a reasonable fee, not to exceed 25 per cent of the savings effected. Bucklen did not testify. Appellant also represented a number of clients in both the so-called widening case and the subway case, both of which were pending in the superior court and assigned to the same judge. Though the widening case, to which appellee was not a party, was tried before the subway case, by direction of the trial judge, the two cases were so interrelated that much of the work done in the trial of the former had a direct bearing on the final disposition of the latter, since the validity of the subway ordinance was attacked in the widening case. The trial of that case occupied much time between April 27, 1931, and March 3, 1932. The transcript of record contained over 11,000 pages. Appellant was most active in presenting evidence in that hearing.

In December, 1932, the city withdrew its motion for trial of the subway assessment case. That case was continued, from time to time, pending the termination of the trial of the widening case. On April 30, 1934, pursuant to the mayor's recommendation, the 1930 subway ordinance was allowed to expire without having been accepted by the Chicago Local Transportation Company, the pro-

spective tenant for the proposed State street subway. In December, 1934, attorneys representing other defendants filed a motion to have the subway assessment case dismissed as to their clients. This motion brought about a meeting on December 20, 1934, before the committee on local transportation, of the city council, attended by appellant. At that meeting, appellant stated that his clients mostly favored the subway improvement by assessment, but due to contrary views by others of his clients and lack of instructions from all of them, he was unable to take a position regarding dismissal. On July 12, 1935, the subway assessment case was dismissed as to all objectors, on written motion of attorneys not associated with appellant. The order of dismissal was based on the lack of a tenant for the subway. Appellant orally joined in this motion to dismiss. After the subway assessment proceeding was dismissed, appellant presented a bill to appellee, Bucklen, as trustee, for legal services rendered in filing objections to the assessments and securing cancellation of the same, divided as between the two trust funds, for 25 per cent of the original assessments, amounting to $10,575.

The trial court found that appellant's cause of action was based upon a specific oral contract to defeat the special assessment proceedings, if possible; that there was no conflict between the interest of other persons represented by appellant and the Bucklen trust; that appellant's efforts contributed to the final dismissal of the subway case, and that appellant was entitled to judgment against appellee, Harley R. Bucklen, individually and as trustee of the Bucklen trust, for the sum sued for, and decreed a judgment for $10,575 and costs.

The Appellate Court reversed this decree on the ground, among others, that the evidence did not sustain the chancellor's finding that appellant was employed to defeat the subway assessment, not merely to reduce it. It also found

that the dismissal of the subway case was in noway due to appellant's efforts. The cause was remanded with directions to dismiss the complaint for want of equity.

Appellant urges here, (1) that the order of dismissal deprived appellant of his constitutional right to a hearing before the trial court, contrary to section 2 of article II of the constitution of Illinois and section 1 of the fourteenth amendment to the constitution of the United States, and deprived him of due process of law; (2) he also argues that he was entitled to recover, whether the contract of employment was to reduce or defeat the assessment, and (3) that the dismissal of the subway assessment proceeding was due chiefly to appellant's efforts and the judgment of the Appellate Court enabled appellee to be unjustly enriched at appellant's expense, contrary to the fundamental principles of equity.

Employment of appellant is admitted. The issue is whether the services rendered were directed toward accomplishing the purpose of that employment. In support of his claim, appellant testified that in the conversation on February 4, 1931, he was asked what points he had in mind as means of "knocking out" the assessment entirely, and appellant gave his opinion that the subway should be a general and not a local improvement. On being told that such an objection, if sustained, would defeat the entire assessment, Miller and Bucklen declared that such a result would be "quite satisfactory." Appellant also testified that he advised his clients that the entire improvement could be defeated because of the fact that the city had no tenant for the subway. The conversation relative to the fee of 25 per cent is not in dispute. Appellant testified he made no memoranda of the conferences. The only writing concerning it consists of the two letters Miller wrote him the next day and his replies thereto.

Without detailing Miller's testimony, it is sufficient to say that he was not as specific in his recollections of the

conversation as was appellant. He testified positively that he recollected that the trustees employed appellant to represent them in the matter; that they wanted whatever protection they were entitled to receive, depending upon the circumstances, and that the trustees were forced into the assessments, and employed appellant to protect them in the matter. He further testified that he recalled nothing said by Bucklen or himself to the effect that they desired the subway assessment to be completely defeated, though it was their feeling that the assessment was too limited in its spread and the spread should have been extended materially to take in a very much wider territory.

Miller's letters of February 5, 1931, show unmistakably that appellant was to be paid a reasonable fee, not to exceed a certain per cent of the amount saved. These letters do not mention the entire defeat of this project. It is not denied, however, that one of the objections to the special assessments filed by appellant, was that the subway ordinance, which was the basis for the assessment, was void. If that objection was sustained, there would be no assessment. Appellant told appellee and Miller that such an objection was or would be filed. This is not denied. "Saving" or "reduction," in generally accepted use, when applied to a case such as this, means to lessen what would otherwise be a liability. If no objections had been filed, the property owners were liable to pay the $22,500 and the $19,800 assessments. By the dismissal of the special assessment proceeding, to which the record shows appellant, by his efforts, contributed, appellee was saved the assessments. The subway was later constructed as a public improvement.

Appellant testified that his services were reasonably worth the 25 per cent maximum of those assessments. In support of his claim he offered the testimony of Irvin Rooks, an attorney, who was acting as chief attorney for the city in the subway litigation. He testified that the

validity of the subway case formed a large part of the record in the trial of the widening case. He also testified that he was familiar with what constitutes the fair, usual, reasonable and customary value of services rendered in special assessment proceedings from 1931 to 1935 in the city of Chicago; that 33⅓ per cent of the amount saved was the usual and customary rate which prevailed for legal services in such cases where employment was on a contingent basis. He also testified that in cases where the subway was defeated and the assessment cancelled, and the property owner technically saved the entire assessment, consideration was frequently given to that fact, and in his practice it was customary to make some adjustment of the one-third fee, having due regard to the entire value of the service rendered. He stated that he had heard of cases where, upon dismissal of the project, fees were fixed as low as five per cent. Appellee offered no evidence to refute that offered by appellant.

Our conclusion from the foregoing is that appellant proved his contract of employment and that he assiduously represented the trust from the time of his employment until the final termination of the litigation. We are also of the opinion that in his efforts he did not endeavor to represent conflicting interests. All his clients were objecting to assessments against them. While he stated that some did not object to constructing the subway by special assessment, it seems reasonable to assume they were all objecting to either assessments or the project as a whole. We are unable to see wherein such facts constitute an inconsistency depriving appellant of fees. That appellant's fees were to be a flat 25 per cent of the amount of the assessments is not shown by the greater weight of the evidence concerning his contract. That they were, however, to be reasonable, depending upon circumstances, seems clear. A definite amount of fees was not agreed upon

but remained to be determined after the litigation was terminated. Appellant, in this suit, has the burden of proving what was a reasonable fee, depending upon the circumstances of the case. From our examination of the record, we are of the opinion that the chancellor was not justified, from the evidence in the record, in finding that appellant was entitled to 25 per cent of the $42,300. Under his contract, appellant is entitled to a reasonable fee, depending upon the circumstances, not exceeding 25 per cent of the amount saved. His witness Rooks did not substantiate his claim to the entire amount as a customary fee in cases such as the one before us.

The question of what appellant's fee in this case should be cannot be determined from this record. That he is entitled to a reasonable fee is amply substantiated, but the record does not sustain his contention that the entire claim is a reasonable fee. Taking into consideration appellant's services, which we find did contribute to the dismissal of the case, and what he paid to real estate experts, costs and other expenses, it was error to order his claim dismissed as without equity.

Appellee insists the trial court erred in entering judgment against him individually and also against the trust *res.* The contract was with the bank and Bucklen as trustees of the Bucklen trust. No provision was made whereby the trustees were to be released from personal liability. The record is silent on the terms of the trust in that regard. It is the rule in this State that a trustee is personally liable unless he expressly contracts against such liability. (*Schumann-Heink* v. *Folsom,* 328 Ill. 321; *Austin* v. *Parker,* 317 Ill. 348; 1 Parsons on Contracts, 121; Bogert on Trusts and Trustees, vol. III, p. 2116.) Appellee's counsel argue that judgment may not run against both appellee personally and also against the assets of the trust, and this is correct, where, as here, there is no show-

ing of provisions of the trust instrument as to indemnifying the trustee. *Austin* v. *Parker,* 317 Ill. 348; *Wahl* v. *Schmidt,* 307 Ill. 331.

It is not necessary to discuss other assignments. The judgments of the Appellate Court and circuit court are reversed and the cause remanded to the circuit court for further proceedings in conformity with the views herein expressed.

*Reversed and remanded, with directions.*